Lyle P. JONES, Appellant,

v.

COMMERCIAL FISHERIES ENTRY
COMMISSION, State of
Alaska, Appellee.

No. 5903.

Supreme Court of Alaska.

Aug. 13, 1982.

248

Peter R. Ellis, Drew H. Peterson, Ellis & Whittaker, Inc., Ketchikan, for appellant.

John B. Gaguine, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This case is an appeal from a superior court decision upholding the denial of an application for a limited entry permit by the Commercial Fisheries Entry Commission (CFEC). We conclude that there was substantial evidence to support the CFEC's rejection of appellant's claim for vessel ownership points, but that the case must be remanded to the CFEC for further consideration of appellant's claim for special circumstances points.

## I. INTRODUCTION

In 1976, appellant Lyle Jones applied for a limited entry permit for the Southeastern Alaska salmon purse seine fishery. Under its priority classification point system,[1] the CFEC originally classified Jones with 17 points,[2] three points short of the number required for entry permit eligibility. Following an administrative hearing, two additional points were verified,[3] bringing Jones to within one point of the required 20. The hearing officer recommended that Jones' claims for vessel ownership points be rejected and that he be finally classified with 19 points.

Jones then requested and was granted a hearing before the CFEC commissioners.

1. The point system was promulgated pursuant to the Limited Entry Act's direction to the CFEC to adopt regulations for ranking applicants "according to the degree of hardship which they would suffer by exclusion from the fishery." AS 16.43.250(a).

2. Jones was awarded 1 point for each year of past participation as a gear license holder from 1960 through 1966 (20 AAC 05.630(a)(2) and (3)); 2 points each for past participation as a gear license holder in 1969 and 1970 (20 AAC

05.630(a)(1)); 1 point for past participation as a crewman in 1968 (20 AAC 05.630(a)(4)); 1 point for consistent participation in 1970 (20 AAC 05.630(a)(1)); and 4 points for the lack of availability of alternative occupations in the Ketchikan area (20 AAC 05.630(b)(4)).

3. Jones was awarded 1 point for past participation as a crewman in 1967 and 1 point for consistent participation in 1969.

After the hearing, the CFEC notified Jones that it had adopted the hearing officer's recommended decision and denied his application for an entry permit. Jones petitioned for reconsideration, arguing in part that he should have been awarded economic dependence points for "special circumstances." The CFEC denied Jones' petition, but informed him that he had five months to submit additional evidence in support of his application. Instead of submitting additional evidence, Jones filed an appeal with the superior court. The superior court, in a written opinion, affirmed the CFEC's decision. This appeal followed.

## II. VESSEL OWNERSHIP POINTS

The regulations adopted by the CFEC allow up to six points for "investment as of [January 1, 1973] in vessel, gear or set net site used or to be used in the fishery for which application is being made." 20 AAC 05.630(b)(3). Jones claims that he is entitled to points for his investment as of the qualification date in two fishing vessels: the *Glacier*, to which he had salvage rights, and the *Lila D*, in which he had an equitable interest. The CFEC rejected Jones' claims, finding that he had effectively abandoned any interest he may have had in the *Glacier* and that he had failed to show by a preponderance of the evidence an interest in the *Lila D*. Jones argues on appeal that there is no substantial evidence in the record to support the CFEC's decision.[4]

Jones and his brother purchased the *Glacier* in 1957. In 1958, the vessel exploded and sank in Ketchikan, where it still lies at the bottom of the harbor. Jones' brother received an insurance settlement on the boat, while Jones kept the fish share, the seine and the skiff.[5] The brothers retained the salvage rights to the boat.

■ Jones argues that since he still had salvage rights to the *Glacier* as of Jan-

uary 1, 1973, he is entitled to vessel ownership points. Jones relies on a letter written to his attorney by a hearing officer stating that it had been the informal policy of the CFEC in 1975 to grant vessel ownership points "in some instances where a vessel had sunk, where there had been no insurance settlement, and where the owner retained salvage rights." However, we agree with the CFEC that even if there was such an informal policy, that policy need not be applied in a situation where, as here, there had been an insurance recovery and the owner had not acted on his salvage rights for 14 years. Thus, we conclude that there was substantial evidence to support the CFEC's finding that Jones had abandoned his interest in the *Glacier* for the purposes of the award of vessel ownership points under 20 AAC 05.630(b)(3).

Jones claims he is also entitled to vessel ownership points for his interest in the *Lila D* as of January 1, 1973. From 1960 to 1966, Jones held a gear license in the Southeast purse seine fishery. During that time, he operated the *Lila D* under a lease-purchase contract with the New England Fish Company (NEFCO). Late in 1966, the *Lila D* was declared a total loss after hitting a rock in Canoe Pass.

■ The evidence as to Jones' interest in the *Lila D* is conflicting. Jones apparently understood that by late 1966 he had $13,500 in credit toward the purchase of the vessel. However, NEFCO's balance sheet showed that the payments totalled only $1,063.38. According to Jones, when he tried to recover his equity in the *Lila D* from NEFCO, he was offered $6,000. Jones testified that he refused the offer and decided to bring suit against NEFCO, but that he did not pursue the lawsuit because he felt he "was too small and they were too big" and because during his divorce his wife had threatened to attach any proceeds he recovered.

---

4. Since the CFEC's decision was based on factual findings, we will apply the "substantial evidence" standard of review. *Jager v. State*, 537 P.2d 1100, 1107 n.23 (Alaska 1975).

5. The seine and the skiff were subsequently destroyed in a fire that swept through the building where they were stored. Jones eventually recovered $1,400, approximately half of the value of the gear and the skiff, from the convicted arsonist.

In a CFEC administrative hearing, the applicant is required to prove "by a preponderance of the evidence that a determination of the commission is erroneous." 20 AAC 05.820(d). The CFEC found that the evidence submitted by Jones on this issue was "very inconclusive." Further, the CFEC found that Jones may have abandoned his claim because six years had elapsed since the *Lila D* was destroyed. Thus, the CFEC concluded that Jones had failed to satisfy his burden of proof. We find that the record supports the CFEC's conclusion and that the CFEC therefore correctly denied Jones' claim for vessel ownership points for the *Lila D*.

## III. SPECIAL CIRCUMSTANCES POINTS

The regulations adopted by the CFEC provide for an award of up to 10 points based on the applicant's "income dependence percentage" in the fishery for which application is made. 20 AAC 05.630(b)(1). The points are awarded only for the years 1971 and 1972, presumably because those years accurately reflect an applicant's income dependence on the fishery as of January 1, 1973, the qualification date. However, the regulations also provide for up to 10 points "if special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972...." 20 AAC 05.630(b)(2).

Since Jones did not fish in the Southeast in 1971 and 1972, his income dependence percentage for those years was zero. Jones argues that a zero percentage does not reflect his true income dependence on the Southeast purse seine fishery. Therefore, he claims that the special circumstances provision should be applied to his situation.

■ The special circumstances issue was first raised by Jones in his petition for reconsideration. Jones claims that procedural due process requires that the CFEC

fully evaluate any new issues raised at the reconsideration stage. We have held that an applicant's interest under the Limited Entry Act is a property interest entitled to due process protection. *Estate of Miner v. Commercial Fisheries Entry Comm'n*, 635 P.2d 827, 832 (Alaska 1981). However, we agree with the CFEC that an agency may, consonant with due process, impose reasonable limits on its adjudicatory procedure. Whether to consider a new issue raised for the first time in a petition for reconsideration can properly be committed to the agency's discretion. We find no due process violation here.

■ In his petition for reconsideration, Jones alleged:

"7.0 That the Commission, in failing to allow applicant to credit points from fishing in other Alaska Districts, and with reference to points which the applicant is entitled to receive for work in the Kodiak purse seine fishery, has unfairly discriminated against the applicant who has established that by reason of financial hardship and other special circumstances the applicant's participation in the Southeast fishery for one or more years was precluded and income dependence in the years 1971 and 1972 are not realistically reflected."

In denying Jones' petition, the CFEC explained that:

"Neither the Act nor the regulations promulgated to implement the Act allow the awarding of points to one fishery for participation in another. In your case, awarding points for the Southeastern Alaska purse seine fishery for participation in the Kodiak purse seine fishery is not possible...."

Jones argues that the CFEC's explanation is not responsive to his broad allegation and that the CFEC should have considered all of the evidence of special circumstances.[6] It is understandable that the allegation might have been read narrowly as only asking the

---

**6.** Jones phrases his argument in terms of the CFEC having abused its discretion by failing to consider the special circumstances claim. In our view, the CFEC *did* attempt to evaluate the claim, but misunderstood the thrust of Jones' argument. Thus, there was no abuse of discretion, but rather an error in interpretation.

CFEC to award points that Jones would have received for participation in other fisheries during 1971 and 1972. In this regard, the CFEC was correct in refusing to award extra points. However, we agree with Jones that the CFEC should have considered the other evidence in the record of special circumstances, *i.e.* the particular factors that caused Jones not to participate in the Southeast fishery during 1971 and 1972.

Jones submitted evidence that he had fished in the Southeast from 1949 to 1970, a total of 22 seasons. Several events, including the destruction of the *Lila D* and a dispute with the local cannery, allegedly forced him to leave the Southeast to fish elsewhere in 1971 and 1972. Jones, of course, had no way of foreseeing the passage of the Limited Entry Act, and, as the CFEC acknowledges, he probably would have remained in Southeast had he anticipated limited entry.

We have stated before that the special circumstances provision "is designed to govern all situations not specifically covered by the regulations proper...." *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979). Moreover, the provision must be read consistently with the Limited Entry Act's purpose of avoiding "unjust discrimination." AS 16.43.010(a). We think that the CFEC's failure to consider Jones' situation as a whole had the potential to result in unjust discrimination.

Accordingly, this case is REMANDED to the superior court with further instructions to remand to the CFEC to consider the evidence set forth above and any other relevant evidence in the record that may constitute special circumstances within the meaning of 20 AAC 05.630(b)(2). If the CFEC concludes that Jones is not entitled to economic dependence points under the special circumstances provision, then it should set forth specifically its basis for so concluding. *See Fields v. Kodiak City Council*, 628 P.2d 927, 932–34 (Alaska 1981).[7]

7. Because we find that the case must be remanded to the CFEC, we need not reach Jones' contention that AS 16.43.250(d), a 1979 amendment to the Limited Entry Act which allows an individual to pool points from two or more administrative areas only if he actually applied for an entry permit in each of those areas, violates equal protection.