Harry FORQUER, Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMIS-SION, Appellee.

Raymond BELLAMY, Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMIS-SION, Appellee.

Max DeVANEY, Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMIS-SION, Appellee.

Nos. 5849, 5930 and 5931.

Supreme Court of Alaska.

Feb. 10, 1984.

C. Michael Hough, Homer, for appellants.

John B. Gaguine, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

This is a consolidation of three separate appeals. All three appellants were applicants for limited entry permits issued by the Commercial Fisheries Entry Commission [hereafter cited as "CFEC" or "Commission"] pursuant to the Alaska Limited Entry Act, AS 16.43.010–16.43.380.[1] The Commission distributes entry permits for each fishery to those applicants who have the highest point totals. Points are awarded for items such as ownership of fishing gear or vessels, economic dependence on fishing, and past participation in the particular fishery. All three of the applicants were denied entry permits for the fishery they applied for. The Commission's reason for each denial was insufficient points.

Appellants raise two main issues on appeal: (1) whether the Commission's definition of "harvesting" to exclude tendering fish is consistent with the Limited Entry Act; and (2) whether appellants were entitled to an administrative hearing after the Commission refused to grant any additional points when appellants had submitted evidence to support such additional points pursuant to Commission regulations.[2]

The superior court affirmed the denial of permits in all three cases. We affirm the superior court insofar as it upheld the Commission's definition of "harvesting" to exclude tendering. We also affirm the summary denial of appellant Forquer's application. However, as to the denial of a hearing opportunity to appellants Bellamy and DeVaney, we reverse and remand. Under the factual circumstances of their cases, we hold that the Limited Entry Act gave these appellants a statutory right to a hearing which was improperly denied by the Commission.

## I. FACTS

### A. Harry Forquer

In March, 1975, Harry Forquer filed a timely application for a limited entry permit for the Bristol Bay salmon drift gill net fishery. He claimed thirteen points. The Commission, in July, initially verified only ten of these points. In its initial classification letter the Commission informed For-

1. Our decision in these cases was deferred pending our determination of the constitutional issues raised in State v. Ostrosky, 667 P.2d 1184 (Alaska 1983).

2. Appellants also state that the Commission failed to comply with the rule making provisions of the Administrative Procedure Act, AS 44.62.010—.44.62.370 and 44.62.640, thereby violating appellant's rights to due process. We

find, however, that appellants have failed to adequately develop both their arguments and the record to enable this court to adequately address this issue at this time. See Alaska R.App.P. 212(c). See also Fairview Development, Inc. v. City of Fairbanks, 475 P.2d 35, 36 (Alaska 1970); Martin v. English, 492 P.2d 105 (Alaska 1971).

quer of his right to request an administrative hearing, provided his request was made prior to August 23, 1975. Forquer filed a timely request for a hearing to challenge the Commission's denial of the three additional points he had claimed. Prior to any hearing, however, the CFEC, in May, 1976, granted Forquer the disputed points and reclassified him at thirteen points. In its reclassification notice the Commission informed Forquer that any right he had to an administrative hearing had now expired. The notice added that since all claimed points had been verified, no issues remained requiring a hearing. Subsequently, Forquer's application was denied because of inadequate points.

In May, 1978, Forquer received a form letter from the Commission which stated:

Our records indicate that you have applied for, but not been issued, an entry permit to harvest salmon with Drift Net gear in Bristol Bay administrative area. Under 20 AAC 05.520(d)(1), you have until July 1, 1978 to submit evidence in support of additional point claims on your application. After that date, your application will be closed to further consideration.

If this creates a burden in your particular situation, contact the Commission in writing prior to July 1, 1978 with an explanation of the time you need. An appropriate closing date will then be established.

Forquer did not contact the Commission until November, 1978. At that time he submitted, through counsel, a set of supporting documents for additional point claims. In December, Forquer submitted an affidavit requesting evaluation of the recently submitted evidence despite its untimeliness. On April 19, 1979, the Commission informed Forquer that the request for time extension was denied. The letter stated:

This request is denied for the following reasons:

(1) No new point claims have been advanced in any of the correspondence received from the applicant or his attorney.

(2) No explanation was given of what evidence the applicant intends to secure or why it was not provided in a timely manner or how much time would be needed to secure it.

(3) Applicant was advised of the July 1, 1978, evidence deadline prior to his claim of a four month isolation at "Chisik Island."

The letter concluded by stating no further evaluation would be made of Forquer's application. Forquer's counsel wrote the Commission protesting the denial. In his protest, he questioned whether the procedures previously followed concerning evidence extensions had changed. He stated, "the Commissioners have consistently in the past been very courteous and helpful in treating applicants equitably by allowing relatively short evidence extensions." The Commission, however, responded by returning all of the submitted evidence on May 22, 1979. Forquer appealed to the superior court, which affirmed the Commission's decision. This appeal followed.

B. *Max DeVaney*

Max DeVaney made a timely application in January, 1975 for a limited entry permit for the Cook Inlet drift gill net salmon fishery. He claimed twelve points. In September, 1975, the Commission notified DeVaney that he had been classified at eleven points, one of his points having been denied. The notice indicated either an issuance or denial would be received in the future. It also informed DeVaney that he had the right to request an administrative hearing on the classification. It added, in capital letters, that such request had to be made by October 22, 1975; after this day DeVaney would have "no additional opportunity to request an administrative hearing." DeVaney did not request a hearing prior to October 22. In December, the Commission notified DeVaney that his application was denied due to inadequate points. It also informed him that the time limit for a hearing had expired.

In May, 1978, DeVaney received the same form letter as Forquer. The Commis-

sion notified DeVaney that it had reopened until July 1, 1978 the period for submitting evidence for all applications. Although this notification stated that a request for time extension had to be received in writing by July 1, the Commission received no such written request from DeVaney until July 24, 1978. The CFEC did not send written acknowledgement granting the time extension, but it did accept and evaluate the evidence DeVaney submitted in August, 1978. On May 29, 1979, DeVaney received a three page letter from a Commission hearing officer. The letter fully analyzed the newly submitted evidence and denied all additional point claims. DeVaney's classification remained at eleven points; thus, his application remained denied. The letter concluded by informing DeVaney that no further administrative review of his application was available.

DeVaney filed a timely appeal to the superior court. That court upheld the CFEC's decision. DeVaney then filed the instant appeal.

### C. *Raymond Bellamy*

The relevant facts surrounding Raymond Bellamy's appeal are quite similar to those of appellant DeVaney. In April, 1975, Raymond Bellamy submitted a timely application for a limited entry permit for the Cook Inlet salmon drift gill net fishery. He claimed six points.. After making inquiries about some of Bellamy's claims, the CFEC notified Bellamy in July that all of his requested points had been allowed and he was classified at six. The notice also informed Bellamy that he could request a hearing on his classification before August 23, 1975. Presumably, because all his claimed points had been granted, Bellamy made no request. Subsequently, on December 22, 1975, the CFEC denied Bellamy's application due to inadequate points. This notice also informed Bellamy that his right to request a hearing had expired.

In May, 1978, Bellamy also received the form letter notifying him that the Commission had reopened the period for submit-

ting evidence for all applications. Any material had to be received or any extension requested in writing by July 1, 1978 to be considered. However, it was not until July 28 that Bellamy wrote to request an extension of time for submission of evidence. Bellamy's request was granted on August 4, extending his deadline to September 1, 1978. Accordingly, Bellamy submitted documents advancing numerous new point claims. He sought, among other claims, to be awarded points for the years in which he had tendered fish (delivered fish from the fishing boats to the processing plant).

On June 1, 1979, Bellamy received a five page letter from a Commission hearing officer. The letter analyzed the newly submitted evidence and denied all of the additional point claims except two based on domicile. The tendering claim was among those claims denied. Bellamy's application was classified with the two additional points, thereby raising his point total to eight. However, since this was below the level necessary for permit issuance, his application remained denied. The letter concluded by informing Bellamy that no further administrative review of his application was available. Bellamy filed a timely appeal to the superior court, but the court upheld the CFEC's decision. Bellamy then filed the instant appeal.

In July, 1981, the three cases were consolidated pursuant to Appellate Rule 503(e).

## II. THE COMMISSION'S DEFINITION OF "HARVESTING" TO EXCLUDE TENDERING.

Only Bellamy contends that the Commission should have awarded him additional points for past participation as a fish tender operator in 1970, 1971 and 1972.[3] He stated in a letter to the Commission that he owned a fish tender and crewed on it in those years. The Commission denied the extra points. Under its interpretation, tendering fish does not constitute "harvesting" as defined in the regulation. 20 AAC 05.610. The superior court affirmed the Commission's determination.

---

**3.** A fish tender delivers fish from the fishing boats to the processing plant.

■ We affirm the superior court's decision.[4] The Limited Entry Act requires the Commission to accept applications "only from applicants who have harvested fishery resources commercially...." AS 16.43.260(a). This is in keeping with the goal of the Act to award permits "according to the degree of hardship which [applicants] would suffer by exclusion from the fishery." AS 16.43.250(a). The Commission's regulations accordingly award points for each year in which the applicant has "harvested the fishery." 20 AAC 05.-610(1).

■ Although this court will evaluate an agency's interpretation of regulations for consistency with the statute on which it is based, *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979), the Commission's interpretation of the word "harvest" to exclude tender is most appropriate. Regardless of the importance of tenders to the fishery effort, they are not engaged in the actual taking of fish. To include tenders would run contrary to the Limited Entry Act's goal of distributing permits according to degree of hardship if excluded from the fishery.[5] We, therefore, affirm the superior court's determination on this issue.

## III. OPPORTUNITY FOR A HEARING

### A. *Max DeVaney and Raymond Bellamy*

All of the appellants contend they were entitled to an administrative hearing after the Commission refused to grant additional points following their evidence submissions in 1978. Both Bellamy and DeVaney requested and received extensions of time in which to submit evidence. The evidence they eventually submitted was accepted and evaluated by the Commission. Each received a detailed letter explaining the reasons for the denial of additional points. Forquer's request for an extension of time, however, was denied. The evidence he submitted was returned to him unevaluated. We, therefore, will analyze Forquer's claim separately.

The CFEC presents one primary argument in support of its contention that its procedures for DeVaney and Bellamy were adequate. It contends that the opportunity for a hearing after the initial classification in 1975 was sufficient to comport with the requirements of due process. To reach this conclusion it seeks to establish that the state's interests in denying a hearing outweigh the personal interest of appellants in having a hearing after the 1978 evidentiary submission.[6]

■ Appellee's forceful arguments regarding the balancing of state interests against private interests to determine whether due process requires a hearing are not of relevance here simply because the Limited Entry Act specifically requires a hearing in these circumstances. Even if a hearing might not be constitutionally required, the Limited Entry Act insures the

---

4. We note that this issue was not expressly mentioned in the Statement of Points on Appeal originally filed by appellants. A point omitted from appellants' Statement of Points on Appeal ordinarily will not be considered by this court. Appellate Rule 210(e) provides:

At the time of filing his notice of appeal, the appellant shall serve and file with this designation a concise statement of the points on which he intends to rely on the appeal. The appellate court will consider nothing but the points so stated. On motion in the appellate court, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record.

In this case, however, we believe that the record below and the Statement of Points on Appeal, when considered with the statement of issues contained in appellant's brief, sufficiently informs the opposing parties and the court of the matters in issue. This is demonstrated by appellee's full briefing of this issue. *Hootch v. Alaska State-Operated School System*, 536 P.2d 793, 808 n. 58 (Alaska 1975).

5. *See Younker v. Alaska Commercial Fisheries Entry Commission*, 598 P.2d 917, 920 (Alaska 1979) ("The Commission's definition of past participation coincides with the legislative view that hardship be measured according to the actual taking of fish in the past.").

6. *See Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970).

procedural protection of a hearing. A statute can certainly create greater procedural protections than those constitutionally mandated. AS 16.43.260(c) states:

> When an applicant is unable to establish his qualifications for an entry permit by submitting the specific verified evidence required in the application by the commission, he may request and obtain an administrative adjudication of his application according to the procedures established in AS 16.43.110(b). At the hearing he may present alternative evidence of his qualifications for an entry permit.[7]

The unavailability of a hearing to DeVaney and Bellamy after the Commission's determination that neither were able to establish their qualifications is a direct contradiction of the mandate of AS 16.43.-260(c). The language of the statute is clear; a hearing opportunity must be provided when the applicant has failed to establish his qualifications for an entry permit. In the instant case, the Commission saw fit to create a second opportunity to the appellants to establish their qualifications by adopting 20 AAC 05.520(d)(1) in early 1978. 20 AAC 05.520(d)(1) provides:

> Evidence in support of ... [1975] applications for [Bristol Bay and Cook Inlet drift gill net fisheries permits] will be considered by the commission if received on or before July 1, 1978, unless the applicant is notified otherwise.

This regulation creates a new adjudicatory procedure distinct from the initial determination in 1975. By its terms, "will be considered," it bound the Commission to make a determination on additional evidence submissions. Yet at the same time, 20 AAC 05.520(e), adopted with the evidence extension of 20 AAC 05.520(d)(1), specifically denied these applicants a hearing in conjunction with this new procedure. 20 AAC 05.520(e) provides:

> A commission decision upon evidence submitted under (d) of this section does not constitute a determination for which the applicant may request and receive an administrative hearing under 20 AAC 05.805 if the applicant has already received the opportunity to request and receive an administrative hearing under 20 AAC 05.805(b)(1).[8]

The Commission argues that the provision for a hearing after the 1975 initial classification was sufficient, since the CFEC's decision to reopen all files in 1978 for new evidence was an entirely voluntary move on its part, not compelled by any prior lack of due process. However, AS 16.43.260(c) does not support this reasoning. The statute allows an applicant a hearing when that applicant "is unable to establish his qualifications". By extending a new opportunity to submit additional evidence to applicants like DeVaney and Bellamy, the Commission was then required to conform to the mandate of the statute and its hearing requirement.

The Commission also forcefully argues that if required to grant hearings after the initial classification stage, the classifying and ranking process would be greatly delayed. But although the Act aims at controlling entry into the commercial fisheries, it seeks as a fundamental purpose to do so without "unjust discrimination." AS 16.-43.010. By deciding to reopen the evidence submission period the Commission presumably had additional permits available to grant to such applicants. The statute requires a hearing opportunity for these applicants to prevent unjust discrimination among them.[9] Instead of being provided a

---

**7.** AS 16.43.110(b), referred to in the statute quoted above, states:
> The commission shall adopt regulations, consistent with due process of law, which govern practice and procedure in the conduct of all investigations, hearings and proceedings which it holds.

**8.** 20 AAC 05.805(b) states in pertinent part:
> The following schedule governs requests for a hearing:

> (1) Application classification or denial. The request for a hearing must be received on or before the 45th day following the mailing date of the notice of classification or notice of denial, whichever was earlier.

**9.** The CFEC in its brief acknowledges that the initial applications of the appellants were "insufficiently prepared."

hearing on their evidentiary submissions, both Bellamy and DeVaney received a detailed analysis and rejection of their proffered evidence by a Commission hearing officer. 20 AAC 05.520(e), which abrogates the statutory right to a hearing in these circumstances, is inconsistent with AS 16.-43.260(c) of the Limited Entry Act. We therefore remand this case to the superior court with direction to order the Commission to grant appellants Bellamy and DeVaney hearings on the additional evidence submitted under 20 AAC 05.520(d)(1).

### B. *Harry Forquer*

Forquer's 1978 evidence submission presents more troublesome questions. Forquer acknowledges that he submitted evidence over four months after the July 1 deadline had expired. This submittal was followed a month later by a request for an extension of the deadline over five months past to allow consideration of the submittal. The Commission refused to grant the extension and returned the evidence. Forquer now contends he was entitled to have such evidence evaluated.

■ As a general rule, an applicant such as Forquer who is aware of and yet misses a reasonable administrative deadline is not entitled to relief. *Silides v. Thomas,* 559 P.2d 80 (Alaska 1977). Yet, in the instant case, our analysis is complicated by the fact that DeVaney and Bellamy both received evidence extensions despite the untimeliness of their requests, while Forquer was denied such an extension.

20 AAC 05.520(d)(1)(a) provides that evidence submissions had to be received on or before July 1, 1978 in order to be considered "unless the applicant is notified otherwise." The letter all three appellants received regarding this new evidentiary submission specified the July 1 deadline. However, if the deadline created a burden, the letter stated that one could "contact the Commission in writing prior to July 1, 1978

with an explanation" of the additional time needed so that an extension could be established.

From the record it is apparent that none of the appellants contacted the Commission in writing prior to the July 1 deadline to request an evidence extension. Bellamy's attorney first wrote the Commission in late July to request a copy of Bellamy's file and request an evidence extension. On August 4, 1978, the request was granted, allowing Bellamy to submit evidence until September 1, 1978. DeVaney requested his file on June 13, 1978. A written request for an extension was made on July 24, 1978. Although the administrative record does not contain a Commission response granting the evidence extension, the Commission accepted and evaluated evidence submitted by DeVaney on September 1, 1978.

It is thus apparent from the treatment accorded both Bellamy and DeVaney that the Commission had on these occasions waived a strict application of the July 1 deadline. But the fact that the deadline was waived for these two individuals, both of whom submitted requests for extensions within a month after July 1, does not establish that the Commission can not rely on the deadline to refuse evaluation of Forquer's application.

> [I]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.

*American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547, 553 (1970), *quoting National Labor Relations Board v. Monsanto Chemical Co.,* 205 F.2d 763, 764 (8th Cir.1953).[10]

---

10. In *American Farm Lines,* the United States Supreme Court noted that there are exceptions to this general principle. Thus, when the regulation is "intended primarily to confer impor-

tant procedural benefits upon individuals in the face of otherwise unfettered discretion," the agency can not ignore it. *American Farm Lines,* 397 U.S. at 538, 90 S.Ct. at 1292, 25 L.Ed.2d at

The Commission's establishment of a deadline is appropriately characterized as a "procedural rule adopted for the orderly transaction of business." In *American Farm Lines*, the United States Supreme Court explicitly recognized the ability of an administrative agency to waive compliance with such a regulation when the ends of justice so require. The CFEC regulation contains language which anticipates such waivers. Under the regulation, the deadline will be enforced "unless the applicant is notified otherwise." 20 AAC 05.520(d).

In order for an applicant such as Forquer to successfully challenge a failure to waive a deadline which others have been granted, he must show that the Commission clearly abused its discretion in denying his extension request. This Forquer has failed to do. All he has shown is that DeVaney and Bellamy received evidence extensions, while Forquer, whose request was made nearly five months later, was denied an extension. On its face such a distinction appears reasonable. Moreover, the Commission provided Forquer with a rational explanation of why it had denied his request. No abuse of discretion has been established.[11]

Forquer's next contention is that any standard for the waiver of the deadline regulation had to be articulated in a regulation itself. *See* AS 44.62.640(a)(2). Yet the regulation creating the deadline provides some indication of the potential availability of waivers. 20 AAC 05.520(d)(1) provides:

Evidence in support of ... applications ... will be considered by the commission if received on or before July 1, 1978, *unless the applicant is notified otherwise.*

(Emphasis added). Although the "unless notified otherwise" language does not clearly indicate a waiver standard, the CFEC has interpreted this language to allow for the availability of waivers. In the absence of any contrary evidence, we assume that the Commission employed a "good cause" standard in waiving the regulation. We find that the regulation gives sufficient notice of the waiver to meet the requirements of the Administrative Procedure Act.

Forquer also contends he was deprived of due process by the Commission's refusal to grant Forquer a hearing on the denial of the evidence extension request. This argument is without merit. As this court held in *Estate of Miner v. Commercial Fisheries Entry Commission*, 635 P.2d 827, 834 (Alaska 1981):

[I]f an application is rejected because it is outside valid time limits and this lateness is apparent on the face of the application and is not contested by the applicant, then there would be no substantial and material issue which could be resolved at a hearing, and thus no need to hold the hearing at all.

The reasoning of *Miner* applies equally to the Commission's rejection of an untimely evidence submission. The Commission's refusal to consider Forquer's late evidence without hearing did not violate procedural due process.

Nor does the Commission's refusal to consider Forquer's additional evidence run

---

553. No such exception is applicable here, since the deadline was enacted to benefit the convenience of the Commission. *See Health Systems Agency of Oklahoma v. Norman*, 589 F.2d 486, 490 (10th Cir.1978).

11. *See American Farm Lines*, 397 U.S. at 538, 90 S.Ct. at 1292, 25 L.Ed.2d at 552–53. *See also Berchem v. Reconstruction Finance Corp.*, 191 F.2d 922 (Em.App.1951). In *Berchem*, the complainant brought an action against the Reconstruction Finance Corporation seeking review of the Corporation's failure to pay certain subsidy claims that were untimely filed under Corporation regulations. The complainant established

that other late claims had been accepted. The court discussed the proper standard for review:

Accordingly if it can be shown that the respondent has established standards for the exercise of its discretionary power to invalidate subsidy claims untimely filed and that in the present case it has clearly departed from those standards in invalidating the complainant's claims the court might well be required to characterize such action as arbitrary or capricious and to set it aside.

*Id.* at 924–925. *See also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv.L. Rev. 629, 639 (1974).

counter to the Limited Entry Act. The Act specifically empowers the Commission to establish and enforce closing dates. AS 16.43.260(b). Moreover, no showing of "unjust discrimination" has been made.[12] The summary denial of Forquer's permit application, as affirmed by the superior court, is hereby affirmed by this court.

AFFIRMED in part, REVERSED and REMANDED in part.