**Stephen R. DOMINISH, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

No. S–6047.

Supreme Court of Alaska.

December 8, 1995.

---

Martin M. Weinstein, Assistant Attorney General, Juneau, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

In 1975 Michael Dominish submitted a timely application for a Cook Inlet salmon drift gill net entry permit. The Commercial Fisheries Entry Commission (CFEC) concluded that Dominish qualified for only twelve of the thirteen points necessary to obtain the permit, and denied his application.

In the following decade and a half, Dominish appealed to CFEC on a variety of bases. After considering Dominish's application numerous times, CFEC denied him a permit. The superior court, sitting as an intermediate appellate court, affirmed CFEC's determination. Dominish appeals. We affirm.

## II. FACTS AND PROCEEDINGS

In 1975 Michael Dominish submitted to CFEC a timely application for a Cook Inlet salmon drift gill net entry permit.[1] Dominish claimed points on a variety of bases: participation as a gear license holder from 1966–69; 1970 participation points, even though he participated in the Peninsula–Aleutians drift gill net fishery that year; 1971 participation points, although he participated in the Prince William Sound drift gill net fishery that year; 1971 income dependence points; 1972 participation and income dependence points, even though he participated in no Alaska salmon fishery that year, allegedly due to illness; points for investment in a vessel; and points due to the lack of availability of an alternative occupation (AAO) in the area of Ohio in which he was living during a portion of the relevant period. See AS 16.43.250; 20 Alaska Administrative Code (AAC) 05.610–.630.

C. Michael Hough, Homer, for Appellant.

---

1. CFEC allocates permits for specific fisheries to applicants who have the highest point totals among applicants. CFEC awards points based upon such factors as ownership of fishing gear and vessels, economic dependence on fishing, and previous participation in fisheries. AS 16.43.010–16.43.990; *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1238 (Alaska 1984).

The CFEC requested more information. It did not receive the requested information. On September 9, 1975, it awarded Dominish a total of twelve of the necessary thirteen points: one point for each year of participation from 1966–68; two points for 1969 participation; one point for consistent participation in 1969; and six points for vessel investment. The remainder of Dominish's claims for points were denied.

Dominish requested a written hearing. The hearing officer made additional requests to Dominish for evidence, finally setting a May 1, 1976, deadline for the submission of additional evidence. Dominish submitted no additional evidence. Still later, the hearing officer himself attempted to obtain information relating to Dominish's claim for AAO points. He was not successful.

On October 7 the hearing officer issued a recommendation that Dominish receive only the twelve points already awarded. The hearing officer denied Dominish's claims regarding 1970, 1971, and 1972 participation points, since (1) Dominish had not fished in the Cook Inlet fishery those years; (2) Dominish had not established that medical problems prevented him from fishing in 1972; (3) Dominish had failed to prove that he had specific intent to fish the Cook Inlet fishery in 1972; and (4) Dominish had not demonstrated he used all reasonable efforts to participate in 1972. The hearing officer also recommended that Dominish not receive AAO points, concluding that census statistics failed to support Dominish's claim that in 1972 he lived in an area that qualified as a region where alternative occupations were deemed unavailable.

On October 19 Dominish sent CFEC a letter requesting further review of his application. At the end of October CFEC set a mid-November review hearing date and invited Dominish to submit more evidence. Apparently Dominish failed to attend the scheduled hearing.

Four days after the review hearing, CFEC received a letter from Dominish, postmarked two days before the hearing, informing CFEC that he had returned to Ohio to gather medical evidence. Dominish's letter also mentioned, apparently for the first time, that his 1972 application for the Cook Inlet fishery had been refused because it was untimely (i.e., it was postmarked one day late).

In mid-December CFEC informed Dominish by letter that the commissioners had adopted the hearing officer's recommendations. Later that month, Dominish's brother wrote to CFEC requesting that it consider additional medical records that Dominish was in the process of obtaining. CFEC informed Dominish in January 1977 that his application was being denied for insufficient points. However, in March CFEC reconsidered and informed Dominish that it would consider additional medical evidence. In April Dominish submitted additional evidence. Later that month CFEC once again denied Dominish's claim.

In June 1978 Dominish complained to CFEC by letter that CFEC had never attempted to permit him to pay a late filing fee for his 1972 gear license application for Cook Inlet. Dominish also provided, among other things, an application envelope bearing a postmark evidencing that Dominish mailed his application one day late.

Later in June Dominish's attorney requested that Dominish's application be reopened and reconsidered. In June and July CFEC communicated with Dominish's attorney and agreed to re-open the application. CFEC expressed to Dominish's attorney its preference to proceed without remanding the matter to a hearing officer, but also requested that Dominish's attorney express any preference in this regard. In September Dominish's attorney responded by indicating to CFEC that "the matter can be more expeditiously handled by the Commission itself."

In July 1979, CFEC referred the matter to a hearing officer. In mid-December Dominish's attorney wrote to inquire about Dominish's ability to take advantage of recent legislation that provided for additional points based upon the pooling of points yielded by participation in other fisheries. AS 16.43.250(d) *as amended by* ch. 64 § 1, SLA 1979. The hearing officer replied that Dominish was ineligible for these points since he had not applied for permits to participate in other fisheries.

The hearing officer wrote to Dominish's attorney in February and March 1981, inquiring as to Dominish's position regarding closing of the record. On December 1, after the former hearing officer resigned, the replacement hearing officer wrote to Dominish, advising him that the record would be closed on December 30, 1981. However, he also advised Dominish that a supplemental hearing on an extension might be available and "[a]ny such request for a supplemental hearing or an extension of time should be made as soon as possible and *must* be made by the deadline set above and *must* be made in writing." On January 7, 1982, after the deadline had passed, CFEC received a letter from Dominish's attorney indicating that Dominish was still in the process of gathering medical records. The letter was dated December 31, 1981. No additional evidence was submitted, so in March 1982 the hearing officer informed Dominish that he would be writing a decision on the application.

CFEC apparently received no interim communication from Dominish, and the hearing officer issued his recommendation in April 1982. He determined that Dominish should remain classified with twelve points. The hearing officer concluded that Dominish's failure to obtain a 1972 gear license was not the result of unavoidable circumstances, since the late application was caused by Dominish's own neglect. He further concluded that Dominish's reliance on Fish and Game to inform him of late application procedures did not relieve him of his "duty to know the licensing requirements which govern his livelihood." The hearing officer also concluded that Dominish's claim of medical impairments had not been sufficiently established to the extent necessary to constitute unavoidable circumstances.

Dominish submitted a request for an oral presentation before the CFEC. The oral appearance was held in November 1982. Dominish attended and testified.

Following the presentation, Dominish submitted affidavits taken in November and December, 1982, from two former Fish and Game officials. The affiants swore that in 1972 there were procedures for the acceptance of late applications. One of the former officials indicated that Fish and Game routinely informed tardy applicants of a late application procedure that required explanation of the failure to meet the deadline, submission of additional fees, and an application. In late December Dominish submitted a memorandum arguing that the State had unfairly deprived him of his license by not informing him of late application procedures, and that when combined with medical difficulties and economic pressures that forced him to fish other areas, he deserved points for special and/or unavoidable circumstances.

In July 1991 CFEC denied Dominish's application for the last time. CFEC concluded that Dominish did not meet the statutory conditions for point pooling since he had not applied "for two or more entry permits under AS 16.43.260(d)." AS 16.43.250(d). It also determined that Dominish did not qualify for AAO points because census statistics for the area in which he resided did not meet the required standards. CFEC further held that Dominish's own testimony did not support his contention that medical problems prevented him from fishing in 1972, as he stated that he would have participated had he received his gear license, and that he did actually fish for halibut that year. CFEC agreed with the hearing officer that the State's failure to accept Dominish's late application did not constitute an unavoidable or special circumstance. Finally, CFEC rejected Dominish's request for special consideration for having participated in fisheries besides Cook Inlet in 1970 and 1971. CFEC reasoned that these choices were freely made by Dominish for economic reasons, and such choices have never qualified as unavoidable or special circumstances.

In August 1991 Dominish requested reconsideration, claiming that he should have been granted a hearing on evidence submitted after July 1, 1978, and that this court's decision in *Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247 (Alaska 1982), meant that CFEC could exercise its discretion and award Dominish income dependence points based on his "overall circumstances." In September CFEC denied the petition, and Dominish appealed to the superior court.

The superior court affirmed CFEC's decision, stating that substantial evidence in the record supported CFEC's findings that Dominish's medical condition did not prevent him from fishing in 1972, that his 1972 Cook Inlet application was filed late, and that no other special or unavoidable circumstances yielded additional application points. Additionally, the superior court held that Dominish had specifically requested a written hearing, was able to make an oral presentation of his case to CFEC, and able to submit all the evidence he offered. Therefore, CFEC had not denied Dominish due process of law.

## III. DISCUSSION

### A. Standard of Review

■ When the superior court acts as an intermediate appellate court, this court reviews the merits of the underlying administrative decision, giving no deference to the lower court's determination. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). This court has four principal standards of review for administrative decisions.

> The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitution of judgment" [, or independent judgment,] test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations.

*Handley v. State, Dept. of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

### B. Claimks Regarding Lack of a Hearing

■ Dominish's chief complaint is that he did not receive an adequate hearing. This argument is made in conjunction with Dominish's claim that he was denied due process of law. This is a question of law, to which this court applies its independent judgment. *Id.*

■ Dominish argues that CFEC improperly denied him a hearing in 1975. At the time of his initial application, CFEC offered Dominish a hearing. Several weeks later, Dominish, who apparently then was residing in Ohio, requested "that it ... be a written hearing because of the distance involved." Now Dominish claims that this hearing never occurred.[2] Yet a CFEC hearing officer provided a detailed, four-page recommendation regarding Dominish's application, a recommendation which was the result of the written hearing. This document specifically notes that Dominish "requested and was granted a written administrative hearing pursuant to" the applicable provision of the AAC. *See* 20 AAC 05.1805 (1976). Additionally, the document refers to evidence that Dominish submitted and failed to submit. Dominish never addresses the implications of this document. Therefore, Dominish has not demonstrated that he was improperly denied a hearing at the time CFEC initially informed him that his application had yielded an insufficient number of points for a permit.

■ Dominish also argues that CFEC erred in not holding a second hearing following our decision in *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236 (Alaska 1984). While it is true that under *Forquer* Dominish was entitled to a second hearing, it appears that Dominish, through his attorney, waived that opportunity. On June 27, 1978, CFEC wrote to Dominish:

> As we discussed, there are several ways in which we may now proceed. Unless there will be submission of large amounts of new evidence, the Commission would prefer to proceed without a remand to a hearing officer. However, if you have a preference, please let us know what you desire.

Dominish's attorney responded:

> I have ... reviewed our previous correspondence regarding whether or not we would desire to have this matter placed back with a hearing officer or leave it with

---

2. Dominish complains about the inadequacy of these proceedings and the notice of the hearing. However, he does not raise these arguments until his reply brief. Therefore, they are waived. *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 158 (Alaska 1992) ("According to Alaska Appellate Rule 212(c)(3), a reply brief may not raise contentions not previously raised in either the appellant's or appellee's briefs.... Thus, this court need not even consider the issue.").

the actual Commission. It seems to me in this particular instance, and due to the circumstances, the matter can be more expeditiously handled by the Commission itself.

Since Dominish elected not to have a hearing, he cannot now complain that a hearing was not provided.

### C. *Claims Regarding Special and/or Unavoidable Circumstances Points*

Dominish argues that our decision in *Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247 (Alaska 1982), mandates that CFEC consider Dominish's "overall circumstances," and award him additional income dependence points due to "special circumstances." *See* 20 AAC 05.630(b)(2). As a supplemental argument, Dominish also asserts that he had "unavoidable circumstances" that entitle him to additional past participation points. 20 AAC 05.630(a)(5).

Specifically, Dominish argues that CFEC erred with regard to "special" and "unavoidable" circumstances by not considering *as a whole* (1) his medical problems and (2) the fact that his application was one day late. This is a question of law involving agency expertise; therefore, this court reviews the contention utilizing the "reasonable basis" test. *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 160–61 (Alaska 1982).

In *Jones,* the applicant for a limited entry fishing permit had supplied evidence in the hope of obtaining points available " 'if special circumstances exist such that an applicant's income dependence is not realistically reflected by his income dependence percentage for the years 1971 and 1972.' " *Jones,* 649 P.2d at 250 (quoting 20 AAC 05.630(b)(2)). As in Dominish's case, Jones had not participated in the fishery in 1971 and 1972. He sought to demonstrate extenuating circumstances that explained this lack of participation, which had resulted in his receiving no income dependence points. *Id.* This court held that CFEC had erred in not considering evidence offered by Jones in his attempt to explain why he had not participated in a certain fishery during the relevant time period, *id.* at 251, and therein lies the distinction from Dominish's situation.

CFEC *did* consider both Dominish's claim that his medical condition and the late postmark affected his participation in the fishery. CFEC deemed both inadequate or unsupported excuses. As CFEC opined, Dominish's own testimony indicated that his physical condition was not the reason he failed to fish during the relevant period. Dominish stated that he would have fished had he received his permit, which he did not due to his late application. Moreover, Dominish did actually participate in the halibut fishery that year. Furthermore, Dominish *and* CFEC's efforts failed to produce sufficient medical evidence to document Dominish's health problems. Hence, his claim that his medical condition is a unique circumstance justifying additional points is not factually supported, and CFEC had a reasonable basis for denying it. CFEC also had a reasonable basis for rejecting Dominish's claim for points as a result of the late application's return since he had not made "reasonable efforts" in the application process. The late postmark is persuasive evidence that he violated the regulation that set the deadline for applications. 5 AAC 39.120(b)(1) (1972). After his application was returned due to tardiness, Dominish made no inquiry on his own regarding late application procedures, even though he was somewhat familiar with the application process and had a brother living in Anchorage at the time. Furthermore, Dominish admitted that he waited until the deadline to apply—in this case and as a matter of practice—because he was monitoring fisheries' closings and wanted to apply to the one that would remain open the longest. These hardly constitute "unique" circumstances that justify awarding Dominish additional points because other regulations for the awarding of points do not adequately address his situation.

This situation is distinguishable from *Jones,* where CFEC had not considered the evidence at all. *Jones,* 649 P.2d at 251. Dominish's claim amounts to a contention that although CFEC considered these circumstances individually, CFEC must consid-

er them in the aggregate also. This is not the holding of *Jones*.

CFEC adequately considered Dominish's claims. Its denial of Dominish's claim of special and unavoidable circumstances related points for the late application and his medical condition was reasonable. The holding of the superior court on this issue is affirmed.

### D. *Equal Protection Arguments*

■ Dominish's arguments in the equal protection section of his briefing are murky. First he discusses the alleged lack of a hearing and makes conclusory assertions that the point system CFEC uses is not "rationally" or "substantially" related to the purpose of the underlying legislation. As already addressed, there is no basis for Dominish's arguments regarding the lack of a hearing. *See supra* part III.B. Dominish's arguments regarding the relationship of CFEC's regulations to the purpose of the legislation are extremely broad and vague, leaving this court to speculate on the way in which they fail to satisfy the purpose of the legislation. Hence, these latter arguments are waived. *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991) (claims addressed only in cursory manner are waived).

■ In the second half of Dominish's equal protection argument, he focuses primarily on CFEC's failure to follow its allegedly normal procedures regarding informing late applicants of alternate application procedures. Dominish maintains that CFEC routinely informed late applicants of the ability to have an application considered after payment of an additional fee for tardiness, but

did not extend the same procedure to Dominish. However, Dominish never alleged that there was any requirement that this procedure be followed. Nor did he articulate a basis for his inclusion within the regulatory criteria that governed the acceptance of late applications.[3] The result is that after making an allegation that, if developed, might lead to a legitimate equal protection claim, Dominish stops and never produces any argument. Once again, he has waived the issue. *Id.*

### E. *Point Claims Arising From Participation in Other Fisheries*

■ Again it is difficult to ascertain what Dominish is arguing. It appears Dominish is asserting that a hearing before CFEC should be granted so that he may argue that he did in fact apply for a Prince William Sound permit via a letter he sent to CFEC;[4] hence, he would be entitled to points via point pooling. *See* AS 16.43.250(d).

Dominish first raised the point pooling issue in December 1979. This was after CFEC had offered him a second opportunity for a hearing—an invitation Dominish declined, *see supra* part III.B.—but while the evaluation of the re-opened application was ongoing. Dominish had inquired whether the recent legislation creating the point pooling provision might yield additional application points for him. AS 16.43.250(d) *as amended by* ch. 64 § 1, SLA 1979. CFEC responded that Dominish would not be eligible because he had not applied for permits other than the one for Cook Inlet.

---

3. At the time, the AAC provided that for salmon fishing net licenses,

    [t]he late registration, or the transfer of registered nets to another registration area shall be permitted by the commissioner only in the case of serious injury, sickness or death of the licensee, or loss of vessel by sinking, destruction or extensive mechanical breakdown.

    5 AAC 39.120(b) (1972). As discussed in part III.C., Dominish did not establish that his medical condition was the cause for his late registration.

4. Dominish also mentions that he participated in the Peninsula–Aleutian drift gill net fishery in

1971. Dominish does so in stating that he nearly qualified for limited entry permits in three fisheries—Cook Inlet, Prince William Sound, and the Peninsula–Aleutian. Dominish seems to assert that under *Jones v. Commercial Fisheries Entry Comm'n*, 649 P.2d 247 (Alaska 1982), CFEC is bound to consider this circumstance in assessing his claim for income dependence. However, Dominish once again fails to adequately develop his argument, neglecting to explain how this constitutes a special circumstance demonstrating the need to award additional income dependence points. Hence, the argument is waived. *Gates*, 822 P.2d at 460.

Perhaps Dominish had a viable argument that the new legislation required a third opportunity for a hearing to provide Dominish with the opportunity to argue that he had applied for a permit via a letter.[5] However, Dominish is content to adhere to his position that he was never offered a hearing at all, merely insisting "that he should have been allowed to pursue a point pooling claim through a hearing which CFEC never allowed." We are not persuaded by Dominish's argument. *See supra* part III.B. Instead, he needed to explain why the point pooling legislation demanded that he again be offered an additional hearing. Therefore, this argument too is waived. *Gates,* 822 P.2d at 460.

## IV. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

5. The hearing officer's recommendations on Dominish's reopened application do not address the point pooling claim. Apparently Dominish never pursued the claim with the hearing officer after receiving the hearing officer's letter indicating that the point pooling legislation was not applicable since Dominish had not applied for alternate fisheries. Nevertheless, CFEC's "Final Commission Decision on Administrative Review" explicitly rejected Dominish's point pooling claim, holding that Dominish had not applied to any fishery besides Cook Inlet during the relevant period. *See* AS 16.43.250(d).