[Civ. No. 43842. First Dist., Div. One. July 29, 1980.]

AANTEX PEST CONTROL COMPANY,
Plaintiff and Respondent, v.
STRUCTURAL PEST CONTROL BOARD,
Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant.

Cyril Viadro for Plaintiff and Respondent.

OPINION

RACANELLI, P. J.—On appeal from a judgment mandating appellant to set aside and to reconsider its decision revoking respondent's "Branch 2" license,[1] we examine the record in light of the statutory purpose regulating the commercial use of poisonous insecticides. We conclude for the reasons which follow that grounds for administrative discipline existed; we reverse the judgment below.

*Facts*

The facts are essentially undisputed. On December 30, 1974, respondent's employee, Yeaman, sprayed the basement and subareas of the

---

[1] A structural pest control license limited to the control of [general] household pests. (Bus. & Prof. Code, § 8560.)

home of Doctors Robert and Rose Chang with a white powdery substance believed to be an ordinary insecticide for control of ant infestation. As a result of the Chang's persistent complaints of a strong permeating odor, an investigation undertaken several months later disclosed that a highly toxic chemical known as Endrin had been sprayed within 14 inches of the furnace air vents, an application concededly below the requisite standard of care. Traces of the noxious chemical were found in the heating vents and air conduits throughout the house, on furniture and in the bloodstream of members of the Chang family. Upon this startling discovery, the Chang family immediately abandoned their contaminated residence and furnishings. Random investigations disclosed similar evidence of Endrin applications in two other residences serviced by respondent during December 1974. William Todd, respondent's managing partner, testified that he had never purchased or used Endrin and was at a loss to explain the presence of the substance used by their employees.

Following an administrative hearing on a formal accusation of violation of the Economic Poisons Act (hereafter Act) and negligent use of a poisonous exterminating agent (see Bus. & Prof. Code, §§ 8647 and 8643), appellant board concluded—inter alia—that grounds for discipline existed resulting in the license revocation. Upon submission of administrative mandamus proceedings instituted by respondent, the trial court filed its memorandum of decision determining that the administrative finding of wilful and negligent use of Endrin was unsupported by the evidence and that such "unknowing use" did not constitute a sale or delivery within the meaning of the statute regulating the licensing and registration of economic poisons. (Food & Agr. Code, § 12993.) The appeal is taken from the judgment mandating reconsideration of disciplinary proceedings.

### Contentions

Appellant's principal contention centers upon the question whether proof of wilfulness or scienter is required under the relevant disciplinary provisions. Respondent merely insinuates the need for such proof in emphasizing its absence in relation to the sanction imposed.

### A.

■ Preliminarily, we note that in an administrative mandamus proceeding to review a license revocation, the trial court must exercise its

independent judgment on the evidence. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 537 [92 Cal.Rptr. 525].) On appeal, however, "'the question is not whether the administrative determination was supported by the weight of the evidence, but whether,...there is substantial evidence in support of the *trial court's findings.*' [Citations.]" (*Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 173 [159 Cal.Rptr. 864]; italics in original.)

However, where findings are neither timely requested nor made, as here,[2] we may properly assume that the trial court found every material fact necessary to support its judgment. (*Golde* v. *Fox, supra,* 98 Cal. App.3d at pp. 173-174; *Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 496 [138 Cal.Rptr. 725].) Moreover, if the evidence with respect to the essential facts is not in conflict, as here, the issues presented are purely questions of law. (*Swaby* v. *Unemployment Ins. Appeals Bd.* (1978) 85 Cal.App.3d 264, 269 [149 Cal.Rptr. 336]; *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal. App.3d 978, 984 [147 Cal.Rptr. 22].) Under such circumstances, we may reach our independent conclusions based upon such undisputed evidence. (*Swaby* v. *Unemployment Ins. Appeals Bd., supra.*)

## B.

At the time of hearing below, section 8647 of the Business and Professions Code provided as follows: "Failure to comply in the sale or use of insecticides with the provisions of Article 3, Chapter 7, Division 5 of the Agricultural Code is a ground for disciplinary action." (Stats. 1941, ch. 1163, § 1, p. 2908.) The specified provisions referred to sections 1061-1079 of the former Agricultural Code, later repealed and reenacted in substantially similar language as Agricultural Code sections 12751-12994 (Stats. 1967, ch. 15, § 2, pp. 197-205).[3] Five years later the Agricultural Code was renamed the Food and Agricultural Code (Stats. 1972, ch. 225, § 1, p. 468.) However, it was not until 1978 that the Legislature amended Business and Professions Code section 8647 to correctly reflect the earlier and more recent changes in form.[4]

---

[2]Although the memorandum of intended decision directed respondent's counsel to prepare an appropriate "order," formal findings proposed by counsel were rejected; no findings or counterfindings were timely proposed by appellant. However, the absence of written findings is not raised as an issue herein.

[3]See appendix.

[4]That section now provides: "Failure to comply in the sale or use of insecticides with the provisions of...Chapter...2 (commencing with Section 12751) of Division...7 of

■ Initially, we reject respondent's argument that the failure to expressly incorporate the 1967 reenactment of the Act into Business and Professions Code section 8647 renders pertinent provisions of such Act inapplicable. "When the provisions of one statute are carried into another statute under circumstances in which they are required to be construed as *restatements and continuations and not as new enactments*, any reference made by any statute, charter or ordinance to such provisions shall, unless a contrary intent appears, be deemed a reference to the restatements and continuations." (Gov. Code, § 9604; italics added.) The relevant provisions of the existing Act are virtually identical with their earlier counterparts; under such circumstances they must be considered as "restatements and continuations of existing law, and not new enactments." (Food & Agr. Code, § 4.) Thus, the previous reference in Business and Professions Code section 8647 to the former Agricultural Code provisions must be construed to refer to the newly enacted sections of the Food and Agricultural Code. (*Valley Electric Co.* v. *Slagle* (1956) 142 Cal.App.2d 81 [297 P.2d 702].)

Pursuant to those provisions regulating the licensing and registration of poisonous and potentially harmful pesticides, appellant board found that respondent had unknowingly applied the economic poison Endrin[5] within the Chang, Jansen and Parker residences. Contrary to the board's determinations, the trial court concluded that in the absence of actual knowledge that the substance used was an economic poison, there could be no violation of section 12993 of the Food and Agricultural Code as a ground for discipline under section 8647 of the Business and Professions Code. We disagree.

■ It has been long recognized that statutory "public welfare" offenses such as here involved require neither guilty knowledge nor intent. (*People* v. *Stuart* (1956) 47 Cal.2d 167, 172 [302 P.2d 5, 55 A.L.R.2d 705] [sale of misbranded drug]; *People* v. *Travers* (1975) 52 Cal.App. 3d 111, 114-116 [124 Cal.Rptr. 728] [sale of misbranded motor oil]; *People* v. *Balmer* (1961) 196 Cal.App.2d Supp. 874, 877 [17 Cal.Rptr. 612]; *People* v. *Beggs* (1945) 69 Cal.App.2d Supp. 819, 822 [160 P.2d

---

the Food and Agricultural Code is a ground for disciplinary action." (Stats. 1978, ch. 1161, No. 10 West's Cal. Legis. Service, p. 4024 [No. 7 Deering's Adv. Legis. Service, p. 661].)

[5]It is undisputed that Endrin is classified as an economic poison (Food & Agr. Code, § 12753; Cal. Admin. Code, tit. 3, § 2460, subd. (k)(8) [repealed in 1977]) which respondent was not licensed to sell.

600] [sale of misbranded food]; see *People* v. *Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850]; *Morissette* v. *United States* (1952) 342 U.S. 246, 254-256 [96 L.Ed. 288, 295-297, 72 S.Ct. 240]; see also 1 Witkin, Cal. Crimes, §§ 62-63, pp. 66-68, § 152, p. 146.) Thus, although ordinarily an innocent employer cannot be held liable for the misconduct of an employee, such an employer will nonetheless be held accountable whenever the offense involved consists of a violation of a general public welfare regulation. (*People* v. *Travers, supra*; *In re Marley* (1946) 29 Cal.2d 525, 527-528 [175 P.2d 832] [short weight violation]; see 1 Witkin, Cal. Crimes, § 49, p. 50.) Respondent's lack of knowledge of its possession and employees' use of Endrin does not foreclose a valid determination by the board that respondent failed to comply with the applicable provisions of the Act.

Respondent's related argument that the statutes regulating the manufacture of, and commerce in, economic poisons do not apply to the *use* of such substances by a structural pest control operator is unconvincing.

As earlier noted, the language of section 8647 of the Business and Professions Code expressly includes the *use* of economic poisons by a licensed pest control operator, manifesting a clear legislative intent that the operator similarly comply with the prescribed licensing and registration conditions before undertaking pest control activities involving *either* the sale or use of such regulated substances. Construction of such legislative intent is fortified by a long-standing administrative interpretation[6] and the limited nature of the statutory exemption previously afforded to such licensed operators.[7]

---

[6]Section 2331 (formerly § 2418) of the California Administrative Code, title 3, provides in pertinent part: "An economic poison used in structural pest control, or other commercial pest control service for hire is subject to the economic poisons provisions of the Food and Agricultural Code, and shall be registered." Such established administrative interpretation is entitled to judicial deference. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].)

[7]Former section 12802 of the Agricultural Code granted the operator an exemption from the licensing and registration requirements of the Act "in connection with his own structural pest control service work...provided the container used identifies the economic poison therein and that it also contains any warning or cautionary statements or symbols which were on the registrant's container,..." (Amended by Stats. 1968, ch. 962, § 1, pp. 1847-1848; repealed by Stats. 1978, ch. 1048, No. 10 West's Cal. Legis. Service, p. 3575 [No. 6 Deering's Adv. Legis. Service, p. 1469].) No evidence supporting such exemption was presented during the administrative proceeding resulting in a finding that the exemption did not apply.

## C.

Appellant argues that the findings of wilfulness and negligence, patterned after the language of the accusation itself, are consistent *inter sese* and with the purposes intended by the related statute disciplining "[t]he negligent handling or use of any poisonous exterminating agent *without due respect to public safety. . . .*" (Bus. & Prof. Code, § 8643; italics added.)[8] We find merit in appellant's argument, but for reasons different from those advanced.

First, there is no requirement that the culpable conduct be wilful in order to invoke the statutory sanction. Indeed, any requirement of wilfulness was expressly removed by earlier amendment (see Stats. 1961, ch. 1192, § 7, p. 2927). Thus, the added finding of wilfulness was mere surplusage. All that need be shown by the evidence is that the licensee or its employee failed to exercise due care and circumspection while using "any poisonous exterminating agent" in performing its licensed activities. The uncontroverted evidence that a poisonous chemical was applied in a manner permitting induction into and through the central heating system and inexorably into the living quarters of an occupied dwelling, unequivocally supported a finding of negligence.

Moreover, it is well recognized that administrative findings may be stated in the language of the accusatory pleadings (Gov. Code, § 11518) without the formality required in judicial proceedings. (*Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 871-872 [206 P.2d 355]; *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124 [40 Cal.Rptr. 171] [cert. den. 380 U.S. 934 (13 L.Ed.2d 821, 85 S.Ct. 940)].) Such findings are sufficient where, as here, they enable the reviewing court to determine that the agency found the necessary facts to support its determination of issues. (*Savelli, supra*, at pp. 134-135.)

Thus, we conclude that respondent was likewise subject to discipline under the provisions of Business and Professions Code section 8643 by reason of the negligent use of a poisonous exterminating agent.

---

[8]The italicized language was deleted by amendment in 1978.

## Disposition

■ Since valid grounds for discipline were found to exist based upon competent evidence, it was well within the discretion of the board to "permanently revoke" the subject license (see Bus. & Prof. Code, § 8620), not as a form of punishment, but "to afford protection to the public." (*Borror* v. *Department of Investment, supra*, 15 Cal.App.3d at p. 540.) Here, the evidence disclosed that on at least three occasions a dangerous pesticide had been used in violation of statutory regulations. Additionally, respondent previously had been found guilty of negligence in the handling and use of a pesticide. Under such circumstances, we cannot conclude that the discipline imposed constituted an abuse of discretion (see generally, *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217-218 [124 Cal.Rptr. 14, 539 P.2d 774]). While license forfeiture is a drastic form of discipline, such an ultimate result does not entitle us to substitute our own judgment as to the propriety of the discipline actually imposed. (See *Rice* v. *Alcoholic Beverage etc. Appeals Bd.* (1979) 89 Cal.App.3d 30, 39 [152 Cal.Rptr. 285].) Given the strong policy considerations underlying the regulatory statutes, the nature and gravity of the circumstances of noncompliance, and the demonstrated likelihood of recurrence, we discern neither abuse of discretion nor excessive punishment as claimed by respondent.

Judgment reversed.

Elkington, J., and Grodin, J., concurred.

A petition for a rehearing was denied August 25, 1980, and respondent's petition for a hearing by the Supreme Court was denied October 15, 1980. Mosk, J., and Clark, J., were of the opinion that the petition should be granted.

APPENDIX

The Agricultural Code formerly provided in relevant part: [§ 1071.] "Every manufacturer of, importer of, or dealer in any economic poison, except dealers or agents selling economic poison which has been registered by the manufacturer or wholesaler thereof, and persons selling raw material to manufacturers of economic poisons, before the same is offered for sale, shall obtain a license from the department.... When any manufacturer, importer, or dealer in economic poisons has complied with this article and the rules and regulations provided for therein and applies for registration of economic poisons, and for a license, the director shall register each economic poison sought to be registered and issue a license to the applicant authorizing the manufacture and sale of economic poison in the State...." [§ 1071.3.] "It shall be unlawful to manufacture, deliver, or sell any economic poison, any substance or mixture of substances that is represented to be an economic poison or retail any formula for an economic poison in conjunction with the sale or gift of materials represented to be the essential ingredients necessary to constitute an economic poison, without a license or which is not registered as required by this article; provided, however, that this paragraph shall not apply to economic poisons products of a registrant, which products are manufactured solely for export outside this State and are so exported."

The Food and Agricultural Code contains substantially similar provisions: [§ 12811.] "Every manufacturer of, importer of, or dealer in any economic poison, except a person that sells any raw material to a manufacturer of any economic poison or a dealer or agent that sells any economic poison which has been registered by the manufacturer or wholesaler, shall obtain a license from the department before the economic poison is offered for sale." [§ 12815.] "If a manufacturer, importer, or dealer in economic poisons that applies for registration of economic poisons and for a license has complied with this chapter and the regulations which are adopted pursuant to it, the director shall register each economic poison that is sought to be registered and issue a license to the applicant which authorizes the manufacture and sale of the economic poison in this state." [§ 12993.] "It is unlawful for any person to manufacture, deliver, or sell any economic poison or any substance or mixture of substances that is represented to be an economic poison, or to retail any formula for an economic poison in conjunction with the sale or gift of materials which are represented to be the essential ingredients necessary to constitute an economic poison, without a license or which is not registered pursuant to this chapter. This section, however, does not apply to any economic poison product of a registrant, which is manufactured solely for export outside this state and which is so exported."