Richard GODFREY, d/b/a Mendenhall
Valley Tesoro, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
COMMUNITY AND ECONOMIC
DEVELOPMENT, Appellee.

No. S–11894.

Supreme Court of Alaska.

Nov. 23, 2007.

Rehearing Denied Feb. 19, 2008.

Paul M. Hoffman, Robertson, Monagle & Eastaugh P.C., Juneau, for Appellant.

Cynthia C. Drinkwater, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The State of Alaska, under authority of AS 43.70.075, administratively suspended Richard Godfrey's authority to sell tobacco for sixty-five days and imposed civil fines because two of his employees had been convicted under AS 11.76.100(a)(1) of negligently selling cigarettes to minors. The question here is whether it was a denial of Godfrey's due process rights to impose these civil penalties against Godfrey without permitting him to dispute in the administrative proceedings whether his employees had been negligent. Because even a conviction "by plea" satisfies the licensing statute and because Godfrey could challenge in the administrative proceedings whether the employees had in fact been convicted or had acted within the scope of their employment, we conclude that Godfrey's due process rights were not violated.

## II. FACTS AND PROCEEDINGS

On February 20, 2002, a woman under the age of nineteen working with the Juneau Police Department purchased a pack of cigarettes at Mendenhall Valley Tesoro, a gas station and convenience store owned by Richard Godfrey, d/b/a Mendenhall Valley Tesoro.[1] The clerk who made the sale was Mi-

---

1. Godfrey's brief states that Mendenhall Valley Tesoro is a limited liability company and that he has managing authority. But he designated the "d/b/a" caption for the appeal, connoting a sole

chael Ratzat. The sale was observed by a Juneau Police Department officer who cited Ratzat for violating AS 11.76.100(a), which makes it an offense to negligently sell cigarettes to minors.[2] As a consequence of the citation, Godfrey accepted Ratzat's resignation. Ratzat pleaded guilty and was therefore convicted of violating AS 11.76.100(a)(1) and fined $200. When Ratzat was cited he stated that he did not check the identification of the buyer because he recognized her and thought he had carded her on a prior occasion.

A similar sale took place on July 28, 2002. The sales clerk was Julia Laurenzana. Laurenzana looked at the purchaser's identification, which accurately revealed him to be under age. Nonetheless Laurenzana sold him cigarettes. The Juneau Police Department officer who observed the sale issued her a citation for violating AS 11.76.100(a)(1). Laurenzana's employment was terminated. She pleaded no contest to the citation and was therefore convicted of violating AS 11.76.100(a)(1) and fined $300.

The Alaska Department of Community and Economic Development gave Godfrey notice that it would suspend the tobacco endorsement to his business license for twenty days and impose a civil penalty of $300 because of Ratzat's conviction, and would impose an additional suspension period of forty-five days and a civil penalty of an additional $500 because of Laurenzana's conviction. This notice marked the initiation of proceedings under AS 43.70.075, which provides that if either the licensee or his employee "has been convicted of violating AS 11.76.100," the endorsement will be suspended and civil penalties will be imposed.[3] Godfrey requested an administrative hearing. Two hearings were conducted, one for each sale. If an employee of the licensee has been convicted of violating AS 11.76.100, AS 43.70.075(m)(1) limits the questions at the license suspension hearing to whether the employee was convicted of violating AS 11.76.100 "while acting within the scope of the ... employment."[4]

Before the first suspension hearing Godfrey moved to dismiss the suspension pro-

---

2. AS 11.76.100 provides in relevant part:

> (a) *A person commits the offense of selling or giving tobacco to a minor if the person*
> (1) *negligently sells a cigarette, a cigar, tobacco, or a product containing tobacco to a person under 19 years of age;*
> (2) is 19 years of age or older and negligently exchanges or gives a cigarette, a cigar, tobacco, or a product containing tobacco to a person under 19 years of age....
> ....
> (f) A person who violates (a) of this section is guilty of a violation and upon conviction is punishable by a fine of not less than $300.

(Emphasis added.)

AS 11.76.100(f) provides that the negligent sale of tobacco products to a minor is a "violation." A "violation" is defined as

> a noncriminal offense punishable only by a fine, but not by imprisonment or other penalty; conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime; a person charged with a violation is not entitled
> (A) to a trial by jury; or
> (B) to have a public defender or other counsel appointed at public expense to represent the person....

AS 11.81.900(b)(63). Violations "characteristically involve conduct inappropriate to an orderly society but ... do not denote criminality in their commission." AS 11.81.250(a)(6).

proprietorship. We will assume that Mendenhall Valley Tesoro is a sole proprietorship.

3. AS 43.70.075(d) provides in pertinent part:

> *If* a person who holds an endorsement issued under this section, or an agent or *an employee of a person who holds an endorsement issued under this section acting within the scope of the agency or employment, has been convicted of violating AS 11.76.100, ... the department shall suspend the endorsement for a period* of
> (1) *20 days and impose a civil penalty of $300 if the person has not been previously convicted of violating AS 11.76.100, ... and is not otherwise subject to the sanctions described in* (2)-(4) *of this subsection;*
> (2) *45 days and impose a civil penalty of $500 if, within the 24 months before* the date of the department's notice under (m) of this section, the person, or *an agent or employee of the person while acting within the scope of the agency or employment of the person, was convicted once of violating AS 11.76.100 ....*

(Emphasis added.)

4. AS 43.70.075(m) provides:

> The department may initiate suspension of a business license endorsement or the right to obtain a business license endorsement under this section by sending the person subject to the suspension a notice by certified mail, return receipt requested, or by delivering the notice to the person. The notice must contain information that informs the person of the grounds for suspension, the length of any suspension sought, and the person's right to ad-

ceedings, claiming that AS 43.70.075(m) is unconstitutional because it denies employers a full and fair hearing as required by due process. Godfrey argued that "[t]hrough application of statutory collateral estoppel, respondent is never given a full and fair hearing on whether its clerk negligently sold tobacco to a person under the age of 19, [or] whether there was entrapment."[5] The hearing officer denied the motion on the ground an agency, as distinct from a court, lacks authority to rule that a statute is unconstitutional. At the outset of the first evidentiary hearing, the hearing officer ruled that he would make no finding inconsistent with the employee's conviction for the offense but that Godfrey could make a record relating to his proposed defenses disputing that the conviction was factually or legally supportable. At the conclusion of each hearing, the hearing officer found that the employees were acting within the scope of their employment when they sold tobacco to minors and that they had been convicted of violations under AS 11.76.100. The hearing officer therefore recommended a cumulative suspension period of sixty-five days and a civil fine totaling $800. The commissioner accepted these recommendations.

Godfrey appealed to the superior court, which affirmed. He now appeals to us.

## III. DISCUSSION

### A. Standard of Review

▮▮▮ Whether there was a violation of Godfrey's right to due process is a question

of law to which we apply our independent judgment.[6] Likewise, "[w]hether a statute violates the Alaska Constitution is a question of law, which we review de novo, adopting the rule of law that is most persuasive in light of precedent, policy, and reason."[7]

### B. Primary Arguments on Appeal

On appeal Godfrey's main argument is that his due process rights were violated because AS 43.70.075 requires suspension of his tobacco endorsement upon his employees' convictions of negligently selling cigarettes to minors, and gave Godfrey no opportunity to be heard on his contention the convictions were not factually or legally supportable. Contending that suspension would result in more than $14,000 in lost profits, in addition to the $800 civil fine, he argues that subjecting him to sanctions of this magnitude

solely because an employee was found guilty of a violation in a summary proceeding is offensive to the due process of law. The license holder is given no opportunity whatsoever to dispute whether any law was actually violated. The license holder's interests are not represented at the summary criminal proceeding, let alone by someone with the same interests who is a party.

Godfrey concludes that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and

ministrative review. A suspension begins 30 days after receipt of notice described in this subsection unless the person delivers a timely written request for a hearing to the department in the manner provided by regulations of the department. If a hearing is requested under this subsection, a hearing officer of the office of administrative hearings (AS 44.64.010) shall determine the issues by using the preponderance of the evidence test and shall, to the extent they do not conflict with regulations adopted under AS 44.64.060, conduct the hearing in the manner provided by regulations of the department. *A hearing under this subsection is limited to the following questions:*

(1) *was* the person holding the business license endorsement, or *an* agent or *employee of the person while acting within the scope of the agency or employment of the person, convicted by plea or judicial finding of violating AS 11.76.100* .... (Emphasis added.)

5. (Footnote omitted.) Godfrey listed the defense issues he would contest if they were not precluded by AS 43.70.075(m), including whether there was negligence on the part of the clerk and whether there was entrapment. As to the clerk Ratzat, Godfrey put the question as follows: "was Mr. Ratzat negligent in the sale, if the person buying had presented an I.D. previously that showed she was more than 19 years of age, such that it was reasonable to believe she was still more than 19 years of age."

6. *Dominish v. State, Commercial Fisheries Entry Comm'n,* 907 P.2d 487, 492 (Alaska 1995).

7. *Sands ex rel. Sands v. Green,* 156 P.3d 1130, 1132 (Alaska 2007); *State, Dep't of Revenue, Child Support Enforcement Div., ex rel. Husa v. Schofield,* 993 P.2d 405, 407 (Alaska 1999).

therefore has never had an opportunity to be heard." [8]

The state argues in response that the $300 criminal fine potentially assessable against employees for the offense of negligently selling tobacco to minors gives employees sufficient incentive to contest citations under AS 11.76.100. The state relies on Godfrey's testimony that "$300 is a lot of money to these people sometimes." Considering that the average hourly wage is $8.00–8.50, the state contends that $300 is almost one week's gross pay for a clerk working thirty-five to forty hours a week. It therefore asserts that clerks have "a significant" incentive to contest the criminal charge "if they have a basis for doing so." The state concludes that if clerks do not contest the charges it is more likely because they do not have a viable defense, not because they do not have the funds to hire counsel, as Godfrey asserts. Furthermore, the state notes that the statute requires a conviction to trigger a suspension. According to the state, "[r]equiring a conviction means that the employee who [is convicted] ... has had a right to trial, a right to confront and question witnesses, a right to subpoena witnesses on his or her behalf, and [that] the state has had to prove the elements of AS 11.76.100 beyond a reasonable doubt." This means, according to the state, it is not unfair to use employee convictions against licensees because any risk that employee convictions would be factually or legally improper is "purely hypothetical."

The state also argues that AS 43.70.075 is constitutional because the government's significant interest in protecting the health of its citizens by regulating tobacco products outweighs an individual's private economic interest and the risk of erroneous deprivation of the private interest. Finally, the state asserts that Godfrey presented no evidence at the administrative hearings concerning the defenses he contended he should be able to raise, namely entrapment and absence of negligence. It follows, the state argues, that even if these defenses are legally available,

this case can be affirmed for lack of evidence supporting the would-be defenses.

In essence, then, the main dispute is whether the statute and the procedure the department followed deprived Godfrey of due process of law because the statute will cause him a large financial loss without giving him a fair opportunity to dispute facts that he thinks are inherently relevant.

### C. The Licensing Statute

The nature of a licensee's exposure to a civil penalty under AS 43.70.075(d) is not obvious. The superior court appears to have characterized it as strict liability. Comparing AS 43.70.075 to our holding in *Alesna v. LeGrue*,[9] the superior court determined that AS 43.70.075 imposes strict liability on employers for the sale of tobacco to minors by employees acting in the scope of employment. On appeal, as it did below, the state seems to characterize the statute as imposing vicarious liability, arguing that AS 43.70.075 imposes vicarious liability for mandatory penalties on the retailer based on its employee's illegal acts. According to the state, imposing vicarious liability under this statute is consistent with how other jurisdictions have regulated licensees who sell or distribute dangerous products. Godfrey, observing that the statute does not impute the employee's acts to the licensee or state that the licensee is strictly liable, characterizes it as unique because it deprives him of property based entirely on a third person's criminal conviction.

It is not necessary in this case to distinguish precisely between the possible theories of civil liability for violations based on a conviction of the licensee's employee. The initial question is whether the state has the power to impose such a penalty without giving the license holder an opportunity to dispute the criminal fault of the employee who has been convicted of negligently selling tobacco to a minor. The statute, AS 43.70.075, does not specify a theory of liability. It simply provides that licensing action is to be taken if the licensee's employee was acting

---

**8.** Here Godfrey quotes *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**9.** *Alesna v. LeGrue*, 614 P.2d 1387, 1391 (Alaska 1980).

within the scope of employment and was convicted under AS 11.76.100. Alaska Statute 43.70.075(m) permits the licensee to dispute whether the employee was acting within the scope of employment and whether there was a conviction; nothing in section .075 implicitly or explicitly makes the issue of the employee's negligence material in the licensing proceeding; only the employee's conviction and employment status are relevant. The text of subsection .075(m)(1) makes it immaterial whether the conviction was "by plea or judicial finding." [10] Alaska Statute 43.70.075 simply requires proof of conviction, and does not require, or provide for, a de novo trial or retrial regarding the employee's negligence. It is true that there must be a finding of negligence for a conviction under AS 11.76.100(a)(1) based on a judicial finding. But a conviction under AS 11.76.100(a)(1) can alternatively be based on a guilty plea or a plea of nolo contendere. Alaska Statute 43.70.075(m)(1) authorizes licensing penalties even if the conviction is based on a plea, and not on a judicial finding.

Thus, the question here is essentially whether due process requires that the license holder be allowed in the licensing proceeding to challenge the employee's criminal fault.

### D. Godfrey's Due Process Was Not Violated by the Statute.

■ A tobacco endorsement is a valuable property interest. Like liquor licenses and other types of business enterprise licenses, it is protected by the due process clause of the Alaska and United States Constitutions.[11] Due process of law thus entitles the holder of an endorsement permitting the sale of tobacco products to a meaningful hearing before the endorsement may be removed or suspended.[12] "Considerations of fundamental fairness" guide our determination of what constitutes a meaningful hearing.[13]

■ To determine what due process requires in particular disputes we have adopted the sliding scale set out by the United States Supreme Court in *Mathews v. Eldridge*.[14] We will consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[15]

The sale of tobacco products is heavily regulated because tobacco has hazardous impacts on public health.[16] These impacts are especially great when tobacco products are sold to minors. In cases involving heavily regulated activities and commerce in hazard-

---

**10.** AS 43.70.075(m) provides in pertinent part that "[a] hearing ... is limited to the following questions: (1) was ... an ... employee ... convicted *by plea or judicial finding* of violating AS 11.76.100." (Emphasis added.)

**11.** *See, e.g., Hilbers v. Municipality of Anchorage,* 611 P.2d 31, 36 (Alaska 1980) (business license protected by due process); *Herscher v. State, Dep't of Commerce,* 568 P.2d 996, 1002 (Alaska 1977) (hunting guide license); *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.,* 524 P.2d 657, 659–60 (Alaska 1974) (liquor license).

**12.** *See Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.,* 991 P.2d 202, 211 (Alaska 1999).

**13.** *Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles,* 921 P.2d 620, 622 (Alaska 1996).

**14.** *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (*cited in State,*

*Dep't of Health & Soc. Servs. v. Valley Hosp. Ass'n,* 116 P.3d 580, 583 (Alaska 2005)).

**15.** *Id.* at 335, 96 S.Ct. 893.

**16.** *Int'l Tobacco Partners, Ltd. v. Beebe,* 420 F.Supp.2d 989, 1003 (W.D.Ark.2006) (recognizing tobacco industry is heavily regulated); *see also Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 570–71, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001), stating that "[f]rom a policy perspective, it is understandable for the States to attempt to prevent minors from using tobacco products before they reach an age where they are capable of weighing for themselves the risks and potential benefits of tobacco use, and other adult activities." The Supreme Court has also stated that "tobacco use, particularly among children and adolescents, poses perhaps the single most significant threat to public health in the United States." *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 161, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).

ous substances, we have consistently recognized that administrative sanctions may be imposed without a finding of intentional or even negligent misconduct.[17] The sale of tobacco products readily falls within this category of commerce.

The criminal provision pertinent here, AS 11.76.100(a)(1), undeniably punishes only sellers who are negligent.[18] Yet the absence of negligence hardly transforms the act of selling tobacco to a child into lawful conduct which cannot be regulated. To the contrary, because the criminal code always bars unincarcerated minors from knowingly possessing tobacco,[19] any sale to a minor, even a non-negligent sale, abets an unlawful act, regardless of whether the seller could be convicted of an offense punishable under the criminal code. And because even non-negligent underage sales cause public harm and abet unlawful conduct, the state will always have a strong and legitimate administrative interest in holding individuals licensed to sell tobacco products strictly accountable for underage sales, regardless of whether the criminal code classifies a particular sale as a punishable offense.

Alaska Statute 43.70.075(d) strives to enforce the state's strong interest in preventing all underage sales by holding licensees liable for any such sale, whether negligent or not. The clear text of subsection .075(d) unequivocally requires the department to suspend an endorsement based on proof of an employee's *conviction* under AS 11.76.100; it does not require proof of the employee's *actual guilt:*

> If a person who holds an endorsement issued under this section, or an agent or an employee of a person who holds an endorsement issued under this section acting within the scope of the agency or employ-

ment, *has been convicted* of violating AS 11.76.100 ... *the department shall suspend the endorsement* for [the applicable period specified in paragraphs. 075(d)(1)-(4) ].[20]

The plain language of this provision reflects the legislature's intent to hinge suspension on proof of the employee's conviction for an underage sale, not on proof of the employee's guilt. Subsection .075(m) confirms this intent by explicitly limiting the issues at an administrative suspension hearing to questions concerning the seller's employment status and the fact of the seller's conviction. In relevant part, subsection .075(m) provides:

> A hearing under this subsection is limited to the following questions: (1) was the person holding the business license endorsement, or an agent or employee of the person while acting within the scope of the agency or employment of the person, convicted by plea or judicial finding of violating AS 11.76.100.... [21]

Furthermore, because subsection .075(m)(1) expressly contemplates a conviction "by plea or judicial finding," it seems clear the legislature understood that convictions might result from pleas, without trial findings of negligence. When read together, then, subsections .075(d) and (m) erase any doubt as to the legislature's intent to hold licensees civilly liable for selling tobacco products to minors upon proof of their employees' convictions, without making their liability depend on proof of their employees' negligence.

Godfrey argues that this liability imposed by the statute is precisely what makes it unconstitutional on its face. Citing *Javed v. Department of Public Safety, Division of Motor Vehicles,*[22] he argues that the statute

---

**17.** See State v. Hazelwood, 946 P.2d 875, 880–84 (Alaska 1997); Alesna v. LeGrue, 614 P.2d 1387, 1390 (Alaska 1980).

**18.** AS 11.76.100(a) ("A person commits the offense of selling or giving tobacco to a minor if the person (1) negligently sells a cigarette, a cigar, tobacco, or a product containing tobacco to a person under 19 years of age....").

**19.** AS 11.76.105 provides:
(a) A person under 19 years of age may not knowingly possess a cigarette, a cigar, tobacco, or a product containing tobacco in this state.

This subsection does not apply to a person who is a prisoner at an adult correctional facility. (b) Possession of tobacco by a minor is a violation.

**20.** AS 43.70.075(d) (emphasis added).

**21.** AS 43.70.075(m).

**22.** Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles, 921 P.2d 620, 622–23 (Alaska 1996) (considering what issues are of "central importance" to be determined prior to a driver's license revocation).

grants him no opportunity to contest issues of "central importance" to the licensing decision because the statute dictates the licensing result.

At first glance, it might appear that what we said in *Javed* about revocation applies here. But in light of the inherent danger posed by commercial tobacco sales, the legislature's clear intent to regulate tobacco sales and to provide firm mechanisms for curtailing tobacco use by minors, and the entirely commercial nature of the licensee's interest, *Javed* is not analogous. In this case, the legislature sought to restrict young people's access to tobacco and, as one mechanism for doing so, provided for holding a licensee who is without personal fault administratively liable for the employee's illegal conduct. Regardless of whether the employee is negligent in making the improper sale, the underlying purpose of the statute is to protect minors by restricting their access to tobacco. Thus, unlike the hypothetical situation contemplated in *Javed,* there would be nothing irrational about suspending a tobacco endorsement if the underlying prohibited conduct—a sale to a minor—has occurred. *Javed* is therefore not analogous, because the "central element" of the licensing action is whether a minor purchased tobacco through Godfrey's tobacco license, not whether the employee was indeed negligent.

Moreover, *Javed* did not involve strict or vicarious liability theories, and there was no opportunity for any adjudication whether Javed had actually been driving.[23] Here, each employee had a full opportunity to require the state to prove both that the sale took place and that the clerk acted negligently. As the state points out, the penalty amount gave the employees ample incentive to defend themselves. This opportunity and incentive to defend oneself, and one's employee, against conviction was therefore enough to ensure that procedurally this issue was not foreclosed.

An employee's conviction for negligently selling tobacco to a minor, whether by plea or judicial finding, provides a reliable basis both for finding that the license holder has given a minor unlawful access to tobacco and for imposing administrative sanctions on that ground. Therefore, the legislature's reliance on the fact of conviction as presumptive proof of sanctionable conduct has a rational basis and is neither arbitrary nor capricious. As the state points out, other courts have viewed analogous legislative provisions as imposing vicarious liability and have upheld their validity regardless of the state's ability to establish fault.[24]

■ Applying the sliding scale of *Mathews*[25] to Godfrey's due process argument convinces us that the administrative hearing did not deprive him of due process. As we noted above, Godfrey has a valuable property interest in his tobacco endorsement. But there was no risk of erroneous deprivation under AS 43.70.075 and the state has a substantial interest in regulating the sale of tobacco to minors. Likewise, the statute requires a conviction before any suspension for an employee's sale can be imposed.[26] Section .075 allowed Godfrey to dispute whether either employee had been convicted under AS 11.76.100 and whether either employee was acting within the scope of his or her employment.[27] Furthermore, the state has a substantial interest in protecting the health of its citizens, especially minors, through the regulation of tobacco products. The sale of tobacco is a heavily regulated activity, and the statute was designed to protect the health of minors by ensuring they do not have access to tobacco. Applying the *Mathews* factors, we conclude that Godfrey was not denied due process: the state's interest and the low risk of erroneous deprivation outweigh his economic interest in an unsuspended tobacco endorsement.

**23.** 921 P.2d at 623–24.

**24.** *See, e.g., Randall's Int'l, Inc. v. Hearing Bd. of Iowa Beer & Liquor Control Dep't,* 429 N.W.2d 163, 165 (Iowa 1988); *Hoge v. Liquor Control Comm'n,* 18 Ohio App.2d 255, 248 N.E.2d 627, 632–33 (1969).

**25.** 424 U.S. at 334–35, 96 S.Ct. 893.

**26.** *See* AS 43.70.075(d).

**27.** *See* AS 43.70.075(m)(1).

It might be argued that fundamental fairness would preclude the department from treating an employee's conviction as conclusive evidence of prohibited conduct, sale to a minor. That argument would have no plausible factual foundation here because Godfrey never put it in genuine dispute, although we assume for discussion's sake that in a given case due process might entitle a licensee to an opportunity to establish that no underage sale actually occurred. Nonetheless, here the licensee did not dispute in the licensing proceedings that underage sales had occurred, and instead sought to defend on a theory that there was no negligence. As noted above, because selling tobacco to a child causes harm and results in unlawful conduct regardless of whether the act of selling involves negligence, proffered evidence of non-negligence could not dispel the presumption of administratively sanctionable conduct established by the fact of a conviction under AS 11.76.100.

█ In summary, when an industry engages in commercial activity that routinely exposes the public to significant harm, the legislature has a legitimate interest in holding the industry's licensed participants accountable for all conduct in exercising the license, not just for the licensee's personal negligence or fault. Here AS 43.70.075 serves the legitimate social purpose of holding licensed participants accountable: "In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." [28]

### E. Godfrey's Right to Due Process Was Not Violated.

Godfrey argues that a meaningful hearing would have allowed him to present defenses regarding his employees' conduct. Regarding Ratzat's conviction, Godfrey previously argued he would have asserted these defenses: Ratzat was not negligent because he believed he had previously checked the identification of the person buying tobacco and it was valid; Ratzat was not acting within the scope of his employment because it was against company policy to sell tobacco to minors; Ratzat was entrapped in making the sale to a minor; and Ratzat's sale was the result of government misconduct. Godfrey also sought to raise entrapment and scope of employment defenses as to Laurenzana's prosecution. The hearing officer ruled that Godfrey was allowed to raise these defenses, but stated that he could make no ruling that would invalidate a criminal conviction.

The hearing officer did not err in describing the limitations the statute imposed on the agency's ability to consider the defenses Godfrey wanted to assert. Godfrey's proffered evidence merely would have raised disputes as to whether the clerks were negligent in making the sales or whether their conduct should have been criminally excused. Because no dispute about negligence or criminal fault was relevant under AS 43.70.075 after the employees were convicted, the hearing officer's refusal to consider any such evidence did not violate Godfrey's right to due process.

█ Godfrey also argues that the hearing failed to comply with AS 43.70.075 because the department was required to implement hearing procedures. Godfrey points to AS 43.70.075(m), which states that a hearing officer "shall ... conduct the hearing in the manner provided by the regulations of the department," and argues that the department was required to adopt procedures for the administrative hearing. But the text of that subsection does not require the department to adopt procedures; it only requires the hearing officer to follow procedures if the department has adopted them. And Godfrey points to no prejudicial procedural errors attributable to the absence of regulations, apart from his inability to raise his proffered defenses to the licensing sanctions.

█ Moreover, even if the department had promulgated procedural regulations, they would not have permitted Godfrey to raise the defenses he wanted to raise. Any procedural regulations would have conformed to the hearing limitations expressed or implied in AS 43.70.075. Per that statute, Godfrey's

---

**28.** *United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *see also* *State v. Hazelwood,* 946 P.2d 875, 880 (Alaska 1997).

rejected defenses were not relevant, and the department could not have adopted regulations that would have made them relevant.

 Finally, Godfrey contends that the hearings violated his right to due process because he could not intelligently prepare a defense or decide to proceed without knowing the rules that would apply at the hearings. But AS 43.70.075 gave Godfrey notice of the issues to be determined at the hearings. If he was surprised by anything the hearing officer said in explanation or elaboration when the hearings began, he should have asked for a continuance. He did not. There is no indication Godfrey's right to due process was violated by the way the hearings were conducted.

## IV. CONCLUSION

For these reasons, the opinion of the superior court is AFFIRMED.

MATTHEWS, Justice, with whom FABE, Justice, joins, dissenting.

MATTHEWS, Justice, with whom FABE, Justice, joins, dissenting.

The issue in this case can be understood by considering the following hypothetical. A young woman purchases cigarettes from a convenience store after showing the clerk an ID indicating that she is of legal age. In fact, the ID is a well-produced forgery and the young woman is one year under age. When caught smoking by a parent, she tells the parent where she bought the cigarettes and the parent reports her purchase to the police. The convenience store clerk is charged with the negligent sale of tobacco products to a minor. The clerk does not believe he was negligent but pleads no contest to the charge because the prosecutor has told him that his fine will be $300 and the clerk knows that it would cost him at least $1000 to hire a lawyer to defend the case. Assuming that the clerk was not in fact negligent, does Alaska's system of imposing sanctions on licensees call for licensee sanctions in these circumstances? Today's opin-

ion would answer yes because it concludes that actual negligence in making a sale to a minor on the part of a retail clerk is not a required condition of imposing sanctions on a licensee. I would answer the question in the negative because I think that actual negligence is a required condition to the imposition of licensee sanctions. Because of this I also conclude that the statute, AS 43.70.075(m)(1), that precludes a licensee from offering proof on the issue of clerk negligence, violates the licensee's due process rights. My reasons for reaching these conclusions follow.

### Preliminary Discussion

At the outset I note my agreement with today's opinion on two points. First, tobacco is a hazardous and addictive substance that is properly regulated by the State. Consumption of tobacco, especially by minors, presents a substantial public health danger. Second, because tobacco use is a hazard and tobacco sales are regulated, sellers can be subjected to administrative sanctions on a strict liability basis.[1] "Strict liability" here means without direct fault, including negligence, on the part of licensees and without vicarious fault based on the conduct of licensees' employees while acting within the scope of their employment. "Vicarious fault" would include the negligence of a retail clerk who sells tobacco to a minor without taking reasonable steps to ascertain the age of the purchaser.

Even though the State *could* impose a system that dispenses with vicarious liability as a predicate to the imposition of sanctions against a licensee, this is not what AS 43.70.075 does. The statute requires—as to sales by clerks—that a clerk be convicted of specified offenses requiring at least negligence on the part of the clerk. The legislature did not contemplate that sanctions would be imposed against a licensee when a clerk acting while exercising reasonable care sells tobacco products to a minor. Thus, AS 43.70.075 is based on vicarious, not strict, liability.

---

1. *See State v. Hazelwood,* 946 P.2d 875, 880–84 (Alaska 1997); *Alesna v. LeGrue,* 614 P.2d 1387, 1390–91 (Alaska 1980).

**Due Process Requires a Hearing on Important Issues.**

A tobacco endorsement is a valuable interest. Like liquor licenses and other types of business enterprise licenses, it is protected by the due process clauses of the Alaska and United States Constitutions.[2] Due process of law entitles a holder of an endorsement permitting the sale of tobacco products to a meaningful hearing before the endorsement may be suspended.[3]

"[C]onsiderations of fundamental fairness" guide our determination of what constitutes a meaningful hearing.[4] Until now we have not examined what makes a hearing meaningful in the context of a tobacco endorsement suspension proceeding. But we have spoken of the requirements of fundamental fairness in the context of driver's license revocation proceedings. In that context we have held that in a revocation hearing a licensee must be given an opportunity to challenge "issues of 'central importance' to the revocation decision."[5] In *Javed v. Department of Public Safety, Division of Motor Vehicles,* that meant that before a license could be revoked, the licensee who failed a breath test needed to be afforded an opportunity to present evidence that he had not been driving.[6] The terms of the governing statute limited the hearing issues in *Javed* to whether the driver failed or refused to take the test and whether the arresting officer had reasonable grounds to believe that the licensee was driving at the time of intoxication.[7] We stated: "It is hard to imagine an issue of more 'central importance' to a driver's license revocation hearing than whether the person accused of DWI was driving a vehicle in the first place."[8] We therefore held that the statute in *Javed,* AS 28.15.166(g), was unconstitutional as applied because it did not permit that critical issue to be adjudicated.[9]

The issues of central importance to the suspension of a tobacco endorsement clearly include whether a sale to a minor took place and whether the clerk who made the sale was acting in the scope of his or her employment when the sale took place. These issues were uncontested in the present case, and they were decided against Godfrey by the hearing officer. The question is whether the employees' negligence in making the sales was also an issue of central importance and thus an issue that Godfrey should have had the right to contest.

**Godfrey Is Not Bound by the Clerks' Convictions.**

Before addressing that question, it is appropriate to establish at this point that Godfrey cannot constitutionally be bound by the facts determined in the proceedings against the clerks. The hearing officer did not make any findings as to whether either of the clerks were negligent when they made the sales. Their convictions for the offense of negligent sale of tobacco products would preclude them from contesting their negligence in subsequent proceedings, unless the amount at stake in the prosecution of the negligent sale proceeding was so limited in comparison to the amount at stake in a subsequent proceeding that it would be inappropriate to give binding effect to the former.[10]

2. *See, e.g., Hilbers v. Municipality of Anchorage,* 611 P.2d 31, 36 (Alaska 1980) (business license protected by due process); *Herscher v. State, Dep't of Commerce,* 568 P.2d 996, 1002 (Alaska 1977) (hunting guide license); *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.,* 524 P.2d 657, 659–60 (Alaska 1974) (liquor license).

3. *See Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.,* 991 P.2d 202, 211 (Alaska 1999).

4. *Thorne v. Dep't of Pub. Safety,* 774 P.2d 1326, 1329 (Alaska 1989).

5. *Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles,* 921 P.2d 620, 623 (Alaska 1996) (quoting *Thorne,* 774 P.2d at 1331); *see, e.g., Graham v. State,* 633 P.2d 211, 216 n. 12 (Alaska 1981).

6. 921 P.2d at 624.

7. *Id.* at 623.

8. *Id.*

9. *Id.* at 624–25.

10. *See* Restatement (Second) of Judgments § 28(5)(c) (1980); *Pennington v. Snow,* 471 P.2d 370, 378 (Alaska 1970):

 [T]he amount at stake in the district court case was far less than amounts involved in the superior court action. If we were to hold the

But the clerks' convictions could not have preclusive effect on Godfrey because Godfrey was not a party to the proceedings against the clerks nor was he in privity with them.

A judgment against one party may not have preclusive effect against another party unless the other party can be said to be in privity with the party against whom the judgment runs. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." [11] In *Pennington v. Snow* we observed that "before privity may be found to exist, the non-party must have notice and an opportunity to be heard; the procedure must insure the protection of the rights and interests of the non-party, and he must in fact be adequately represented by the parties." [12]

In formulating this standard we noted that "we are guided by the requirements of due process." [13] Here, Godfrey had neither notice nor an opportunity to be heard with respect to the prosecution of the citations against his employees. He thus did not have the opportunity to litigate whether the employees were negligent when they made the sales in question. [14]

### Vicarious Fault—Employee Negligence—Is Required for Licensee Sanctions.

It is clear based on the text of AS 43.70.075(d) and (m)(1) that the legislature did not intend to condition the imposition of sanctions against a licensee only upon direct fault on the part of a licensee. A clerk's act

findings of the district court conclusive in this case, we would in effect be binding the appellant to accept the consequences of a suit in which she had less time to prepare her case and less incentive to adjudicate all of the issues to the fullest extent.

(Footnote omitted.) Today's opinion states that clerks accused of the violation of negligent sale of tobacco products to a minor have an "ample incentive to defend themselves" and "to require the state to prove both that the sale took place and that the clerk acted negligently." Majority at 1205. This "ample incentive" language appears to be a reference to the use of a clerk's conviction in subsequent proceedings. Lack of an adequate incentive to obtain a full and fair adjudication in an initial action is a well recognized ground for refusing preclusive effect to the judgment in the initial action in a subsequent action: "The amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." RESTATEMENT (SECOND) OF JUDGMENTS § 28 cmt. j. If there were subsequent proceedings with serious consequences *against clerks* this exception would apply. Violations are non-criminal acts punishable only by a fine. They do not give rise to any legal disability and carry little, if any, public opprobrium. AS 11.76.100(f); AS 11.81.900(b)(63). Publicly funded counsel are not provided in prosecutions for violations. AS 11.81.900(b)(63)(B). The cost of hiring an attorney to defend such charges far exceeds the small fines associated with them—in this case, $200 for Ratzat and $300 for Laurenzana. In the present case, however, the only subsequent proceedings are against the licensee. The lack of an adequate incentive on the part of the clerks to defend themselves would also bar preclusive use of their convictions in a proceeding against the licensee, except that, for the reasons explained in the discussion that follows in the text of this dissent,

the licensee cannot be bound by them because he was not a party to the prosecutions against the clerks and did not assume control of their defenses. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 39: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."

11. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

12. *Pennington*, 471 P.2d at 375–76.

13. *Id.* at 375.

14. To the extent that today's opinion suggests that the opportunity to be heard requirement is satisfied because a licensee has the opportunity to defend his clerk in a violation proceeding, Majority at 1205, the court ignores a number of considerations. First, the licensee may not have notice of the charges. In this case the hearing officer found that Godfrey lacked notice of Laurenzana's citation and court proceeding. The hearing officer did not make a finding either way with regard to Ratzat, though Godfrey claims he lacked notice of this proceeding as well. Second, the employee may not want to be defended. The employee may want to pay a small fine and put the matter to rest rather than be engaged in a potentially long adversarial proceeding. Third, even if the employee agreed to a licensee-sponsored defense, the licensee's interests may conflict with the employee's, rendering licensee control inappropriate. Finally, assuming that the licensee undertook a vigorous defense on behalf of his employee, this could radically alter what the legislature meant to be a brief and simple proceeding for a mere violation.

may also cause a licensee to be sanctioned, but only when the clerk is convicted of a negligent sale while acting within the scope of his or her employment. Negligence, of course, is a required element of the offense of negligent sale, and a clerk's conviction is a necessary predicate to the imposition of sanctions on the licensee. Thus, employing a literal reading of the relevant statutory sections, the legislature seems to have intended that there should be no sanctions against a licensee unless a clerk makes not only a sale to a minor, but a *negligent* sale to a minor. Use of a clerk's conviction appears to be a shortcut method of proving both the fact of the sale and the clerk's negligence. But the problem, as we have seen, is that this method of proof also shortcuts due process where the licensee has not had an opportunity to be heard on the underlying issues.

I believe that the legislature intended that there be no sanctions against a licensee without at least vicarious fault. In other words, no sanctions against a licensee were contemplated when a clerk makes a non-negligent sale to a minor. Three sources support this conclusion: (1) the text of the statutory system; (2) its legislative history; and (3) the State's concession.

With respect to the text, as explained above, negligence is required for a clerk's conviction, and no sanctions may be imposed against a licensee without a conviction.

With respect to legislative history, the debates concerning AS 43.70.075 focused on whether imposing vicarious liability on licensees—sanctioning licensees for an employee's fault rather than the direct fault of a licensee—would be unfair to a licensee. The prevailing view was that imposing licensee sanctions where employees were at fault was acceptable—licensees could train employees to avoid mistakes.[15] No legislator expressed the view that it would be fair to sanction a licensee when an employee was not at fault.

Concerning the State's concession that vicarious fault in the form of clerk negligence is required, the concession is made explicitly in the caption to the State's first argument. The caption reads, in relevant part, as follows: "*AS 43.70.075*, as a public welfare statute, *is designed to hold employers liable for the acts of their employees who negligently sell to minors.*"[16] The same concession is repeated in the body of the State's brief: "The framework of [AS 43.70.075], which *imposes vicarious liability on a retailer* based on its employee's illegal acts and for mandatory penalties, is consistent with how other

15. The State characterizes the 1989 debates concerning the bill that became AS 43.70.075 as follows:

> Some legislators expressed concern about the bill, observing that it could adversely affect a vendor's license when in fact an employee was at fault. But other representatives pointed out that the suspension periods would work as an incentive to curtail the sale of tobacco to minors because vendors would be more likely to hire scrupulous employees and to educate them.

*See An Act Relating to Tobacco and Products Containing Tobacco: Hearing on H.B. No. 141 Before the S. Comm. on Cmty. & Reg'l Affairs,* 16th Leg., 1st Sess. (Alaska Apr. 27, 1989); *Relating to Retail Sale of Tobacco, Tobacco Products, and Devices for Smoking Tobacco: Hearing on H.B. No. 141 Before the H. Comm. on Fin.,* 16th Leg., 1st Sess. (Alaska Apr. 7, 1989); *An Act Relating to Retail Sale of Tobacco, Tobacco Products, and Devices for Smoking Tobacco: Hearing on H.B. No. 141 Before the H. Comm. on Fin.,* 16th Leg., 1st Sess. (Alaska Mar. 30, 1989); *An Act Relating to Retail Sale of Tobacco, Tobacco Products, and Devices for Smoking Tobacco: Hearing on H.B. No. 141 Before the H. Comm. on* *the Judiciary,* 16th Leg., 1st Sess. (Alaska Mar. 17, 1989). With respect to the 2001 amendments to AS 43.70.075, which increased sanctions and made them mandatory, the State characterized the debates as follows: "Representative Joe Hayes expressed concern that the suspension periods would essentially punish the business for the employee's mistake. Representative Meyer responded that businesses are responsible for their employees and need to make sure that employees are adequately trained." *See An Act Relating to the Offense of Selling or Giving Tobacco to a Minor, to the Accounting of Fees from Business License Endorsements for Tobacco Products, to the Disclosure of Certain Confidential Cigarette and Tobacco Product Information, to Notification Regarding a Cigarette Manufacturer's Noncompliance with the Tobacco Product Master Settlement Agreement, to Business License Endorsements for Sale of Tobacco Products, to Citations and Penalties for Illegal Sales of Tobacco Products; and Providing for an Effective Date: Hearing on H.B. No. 228 Before the H. Comm. on Labor and Commerce,* 22d Leg., 1st Sess. (Alaska Apr. 18, 2001).

16. (Emphasis added.)

jurisdictions have regulated licensees who sell or distribute dangerous products."[17]

### Conclusion

For the above reasons, negligence on the part of a clerk is, in my view, an issue of central importance in licensee sanction proceedings and a licensee is entitled to a meaningful hearing on this issue. It follows that, to the extent that AS 43.70.075(m)(1) bars such a hearing, it violates a licensee's due process rights.

---

**17.** (Emphasis added.) In its discussion of licensee sanctions in other jurisdictions, the State repeatedly adverts to the requirement of vicarious liability. It argues, "[c]riminal liability may be found against an accused *although the accused is only vicariously liable for the act* because such an act comes under the rubric of 'public welfare offense.'" (Emphasis added.) The State further observes that "there are numerous statutes involving licensing of sellers of alcoholic beverages, a similarly age-restricted product, *which hold employers vicariously liable for their employees negligent or criminal conduct.*" (Emphasis added.) The State's brief features the following quotation from a California court:

It has long been recognized that statutory public welfare offenses such as here involved *require neither guilty knowledge nor intent.* Thus, although ordinarily an innocent employer cannot be held liable *for this misconduct of an employee,* such an employer will nonetheless be held accountable whenever the offense involved consists of a violation of a general public welfare regulation. (Emphasis added.)

The explanatory footnote accompanying this quotation in the State's brief states:

*Aantex Pest Control Co. v. Structural Pest Control Board,* [108 Cal.App.3d 696] 166 Cal.Rptr. 763 (Cal.App.1980) (license revocation upheld *based on employee's negligent use* of an exterminating agent, even though employer lacked knowledge of company's possession of the chemical and of employee's use of it); *see also Camacho v. Youde,* [95 Cal.App.3d 161,] 157 Cal.Rptr. 26, 28 (Cal.App.1979) (upholding 60-day license suspension *based on an employee's negligent conduct* in applying pesticides; no due process violation because the objective of an administrative proceeding relating to a license suspension is to protect the public.)[.] (Emphasis added.)